**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PORT DRIVERS FEDERATION 18, INC., ET AL., | : : : : : : |
| Plaintiffs, | : : **OPINION** : |
| v. | : Civ. No. 09-0868 (WHW) : |
| ALL SAINTS EXPRESS, INC., ET AL., | : : |
| Defendants. | : : : : : : : |

<u>**Walls, Senior District Judge**</u>

.

Plaintiffs Port Drivers Federation 18, Inc., Florencio Hernandez, Julian Hernandez, Jose Landa, Nelson Rodriguez, and Juan Marte ("plaintiffs") and defendants All Saints Express, Inc. and St. George Warehouse, Inc. ("defendants") cross-move for summary judgment.   The motions are granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are independent owners and operators of trucks[1] who lease their trucking equipment and driving services to defendant All Saints Express, Inc. ("All Saints").   (Compl. ¶ 2.)

---

[1] Plaintiffs state that Port Drivers Federation 18, Inc. is acting "in a representative capacity on behalf of its members who operate under lease to the Defendant," its members being the other named plaintiffs.   Although defendants do not raise the issue, the Court notes that, under <u>Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock</u>, an association such as Port Drivers Federation 18, Inc. has standing to sue on behalf of its members and is a proper plaintiff because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."   477 U.S. 274, 282 (1986).

FOR PUBLICATION

All Saints is a Delaware corporation with its primary place of business in New Jersey.   (Compl. ¶ 6; Answer ¶ 6; Pl. Statement of Facts ¶ 3; Def. Resp. to Pl. Statement of Facts ¶ 3.)   Defendant St. George Warehouse, Inc. ("St. George") is a Delaware corporation engaged in the business of warehousing imports and exports that are subject to inspection by U.S. Customs; St. George owns a Custom-bonded warehouse in Kearny, New Jersey and holds multiple bonds with the U.S. Customs Office.   (Def. Statement of Facts ¶¶ 4-5, 9-10; Pl. Resp. to Def. Statement of Facts ¶¶ 4-5, 9-10.)

All Saints' sole business is transporting the cargo of St. George's customers between ports in New York and New Jersey and the St. George warehouse, or directly from the St. George warehouse to customers of St. George.   (Def. Statement of Facts ¶¶ 9, 13-14, 22; Pl. Resp. to Def. Statement of Facts ¶¶ 9, 13-14, 22.)   All Saints owns no trucks and no warehouses, and has no board of directors and no employees; it provides transportation services to St. George by contracting with independent owner-operators of trucks to transport the cargo.   (Pl. Statement of Facts ¶¶ 17-18, 21; Def. Resp. to Pl. Statement of Facts ¶¶ 17-18, 21.)   (See also Hearing Tr. ("The Court: All Saints has no warehouse? / Mr. Fiorenzo: All Saints does not own any warehouse.")   St. George compensates All Saints for this transportation.   (Pl. Statement of Facts ¶ 21; Def. Statement of Facts ¶¶ 16, 19; Pl. Resp. to Def. Statement of Facts ¶¶ 16, 19.)

Between 2004 and 2008, All Saints executed "Independent Contract(or) Agreement[s]" with plaintiffs Florencio Hernandez, Julian Hernandez, Jose Landa, Nelson Rodriguez, and Juan Marte, under which plaintiffs agreed to lease their equipment and services to All Saints for the purpose of transporting property.   (Compl. ¶¶ 8-12; Answer ¶¶ 8-12.)

**FOR PUBLICATION**

On February 25, 2009, plaintiffs filed a Complaint for Declaratory and Injunctive Relief against defendants.   Plaintiffs allege that the agreements they entered into with All Saints are "leases" under the federal Truth in Leasing Regulations ("the Regulations"), with plaintiffs being the "lessors" of equipment and services and All Saints being the "lessee," and as such, that All Saints is subject to the Regulations.   (Compl. ¶¶ 1, 13-16.)   Plaintiffs further allege that the leases violate the Regulations by failing to include:

(1) the amount of the lessors' compensation (49 C.F.R. § 376.12(d));
(2) documentation regarding the lessors' compensation (49 C.F.R. § 376.12(g));
(3) a term specifying the duration of the lease (49 C.F.R. §§ 376.11(a)-(b), 376.12(a)-(b));
(4) documentation regarding workers' compensation insurance (49 C.F.R. § 376.12(j)(2)); and
(5) information regarding the amount of "charge-backs" (items initially paid for by lessee but ultimately deducted from lessors' compensation) (49 C.F.R. § 376.12(h)).

(Compl. Counts I-V.)

Plaintiffs seek relief under 49 U.S.C. § 14704, which provides that a party injured due to a violation of the Truth in Leasing Regulations may bring a civil action for injunctive relief.   49 U.S.C. § 14704(a)(1).   Specifically, plaintiffs seek:

(i) a declaratory judgment finding that the agreements in question are leases that violate the Regulations,
(ii) an injunction prohibiting All Saints from performing transportation requiring authorization from the Department of Transportation until it enters into written lease agreements meeting the requirements of the Regulations,
(iii) an injunction compelling All Saints to disclose documents as required by the Regulations,
(iv) an injunction preventing All Saints from engaging in retaliation or harassment against plaintiffs, and
(v) an award of attorneys' fees and expenses.

(Compl. Prayer for Relief ¶¶ 1-7.)

**FOR PUBLICATION**

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c)(2).   A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.   See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.   See Anderson, 477 U.S. at 248.   The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."   See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Scott, 550 U.S. at 380 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).   To survive a motion for summary judgment, the nonmovant must present more than a mere "scintilla of evidence" in his favor.   Woloszyn v. Co. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).   The opposing party must set forth specific facts showing a genuine issue for trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).   At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial.   See Anderson, 477 U.S. at 249.   In

4

**FOR PUBLICATION**

doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.   Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

"[W]here motions for summary judgment are made by both parties, if the pleadings present a genuine issue as to a material fact, there can be no valid summary judgment of the disputed facts."   Tomalewski v. State Farm Life Ins. Co., 494 F.2d 882, 884 (3d Cir. 1974) (citations omitted).   As the Eighth Circuit has stated, "Summary judgment should be granted sparingly, and we do not assume that no material facts remain in dispute simply because both parties moved for summary judgment."   Matter of Citizens Loan and Sav. Co., 621 F.2d 911, 913 (8th Cir. 1980) (citations omitted).   Rather, "[t]he court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. Indeed, both motions should be denied if both parties fail to meet their burden."   In re Kewanee Boiler Corp., 198 B.R. 519, 524 (Bkrtcy. N.D. Ill. 1996) (citing to ITT Indus. Credit Co. v. D.S. America, Inc., 674 F. Supp. 1330, 1331 (N.D. Ill. 1987)).

## DISCUSSION

Under Title 49 of the U.S. Code, the federal government is charged with overseeing modes of interstate and international transportation, including transportation by motor carriers.   49 U.S.C. §§ 13101, 13501.   A "motor carrier" is a" person providing motor vehicle transportation for compensation."   49 U.S.C. § 13102(14).   A "motor vehicle" is a "vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation."   49 U.S.C. § 13102(16).
"Transportation" is:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility,
> instrumentality, or equipment of any kind related to the movement of passengers or
> property, or both, regardless of ownership or an agreement concerning use; and

**FOR PUBLICATION**

> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C § 13102(23).

Under the statutory framework of Title 49, motor carriers engaging in interstate transportation must register with the Secretary of Transportation to receive operating authority and then must comply with regulations promulgated by the Secretary.   49 U.S.C. §§ 13901-2, 14102. These regulations include the federal Truth in Leasing Regulations, which govern the agreements between motor carriers and the independent owner-operators of trucks who are hired by the carriers to transport goods.   49 C.F.R. §§ 376.1, et. seq.   A person aggrieved by a motor carrier's non-compliance with the statutory and regulatory regime created by Title 49 may seek damages and equitable relief under 49 U.S.C. § 14704.

Plaintiffs make three basic arguments.   First, plaintiffs assert that All Saints is subject to the provisions of Title 49 and, in turn, to the Regulations promulgated under Title 49.   (Compl. ¶ 1; Pl. Br. 4-10.)   Second, plaintiffs argue that the "Independent Contract(or) Agreements[s]" they entered into with All Saints violate the provisions of the Regulations.   (Pl. Br. 14-22; Compl. ¶ 2.) Third, plaintiffs assert that St. George is liable for All Saints' violations of the Leasing Regulations because it is an alter ego of All Saints (Pl. Br. 10-13; Compl. ¶ 17), or, in the alternative, because St. George is "affiliated" with All Saints.   (Pl. Reply 7-8; Compl. ¶ 17.)

**I. Applicability of the Regulatory Framework**

Plaintiffs argue that All Saints is subject to the Regulations because it is a registered and authorized motor carrier.   (Pl. Br. 4-5.)   All Saints does not dispute that it is a registered and authorized motor carrier.   Instead, All Saints contends that it is not subject to the regulations

6

FOR PUBLICATION

because it comes under the "primary business" and the "corporate families" exemptions of Title 49.   (Def. Opp. 5.)

Plaintiffs also argue that St. George is subject to the Regulations because it is a registered motor carrier.   (Pl. Br. 5.)   This argument is irrelevant.   Because plaintiffs have only entered into agreements with All Saints, and not with St. George, (Compl. ¶¶ 9-13) St. George cannot be directly liable to plaintiffs even if St. George is a registered motor carrier under Title 49.   The Court considers indirect liability for St. George in Section IV, *infra*.

### A. All Saints as Motor Carrier Under Title 49

Plaintiffs argue that All Saints is subject to the statutory and regulatory regime of Title 49 because it is a registered motor carrier.   (Pl. Br. 4-5.)   As discussed, All Saints enters into leases with independent owner-operators of trucks under which the owner-operators transport cargo to and from the St. George warehouse.   All Saints is then compensated for this transportation by St. George.   Because All Saints makes use of trucks, which are vehicles used on highways, it utilizes "motor vehicles."   Because All Saints utilizes motor vehicles, equipment, and warehouses related to the movement of property, it is engaged in "transportation."   Because All Saints receives compensation for this motor vehicle transportation, it is a "motor carrier" under the statute.   And, All Saints has registered with the Department of Transportation as a motor carrier.   (Pl. Statement of Facts ¶¶ 35-36.)   Defendants argue that All Saints is not subject to Title 49 because it did not intend to be a registered motor carrier and only registered as a motor carrier to comply with the Customs-related requirements to which St. George is subject.   (Def. Opp. 17 n.4; Def. Reply 7.) Title 49 makes no mention of intent; rather, it requires entities meeting the statutory definition of motor carrier to register with the Secretary and comply with regulations promulgated by the

7

**FOR PUBLICATION**

Secretary.   49 U.S.C. §§ 13901-2, 14102.   All Saints is a motor carrier under the statute;

regardless of its intent in registering itself.

As a matter of law, All Saints is a motor carrier under Title 49 unless it can show that it

shelters under an applicable statutory exemption.

**B. Primary Business Exemption**

The primary business exemption, codified in 49 U.S.C. § 13505(a), provides that the

Secretary of Transportation does not have jurisdiction over the transportation of property by motor

vehicle when "(1) the property is transported by a person engaged in a business other than

transportation; and (2) the transportation is within the scope of, and furthers a primary business

(other than transportation) of the person."   49 U.S.C. § 13505(a).

Relying on the "leading and often cited" case <u>I.C.C v. V.S.C Wholesale-Warehouse Co.</u>,

312 F. Supp. 542 (D. Idaho 1969), defendants contend that All Saints comes under the primary

business exemption because the transportation it engages in is incidental to St. George's primary

non-transportation business of warehousing.   (Def. Opp. 11-17.)   Plaintiffs counter that All

Saints does not come under the exemption because its primary business is the "supplying of

transportation for compensation."   (Pl. Br. 7.)

Defendants' reliance on <u>V.S.C.</u> is misplaced.   The <u>V.S.C.</u> court held that a corporation

whose business was 5% motor transportation and 95% warehousing could not avail itself of the

primary business exemption because the "the substance of the defendant's operation is the

transportation of property in interstate commerce by motor vehicle for compensation."   <u>V.S.C.</u>,

312 F. Supp. at 543-44, 548.   While the <u>V.S.C.</u> Court found that "the motor operations of V.S.C.

**FOR PUBLICATION**

are a distinct enterprise which is not within the scope of its warehousing business," id. at 547,

V.S.C. was decided in 1969.   At that time, Title 49 defined "transportation" to include:

> locomotives, cars, and other vehicles, vessels, and all instrumentalities and
> facilities of shipment or carriage, irrespective of ownership or of any contract,
> express or implied, for the use thereof, and all services in connection with the
> receipt, delivery, elevation and transfer in transit, ventilation, refrigeration or icing,
> storage, and handling of property transported.

49 U.S.C. § 1 (3)(a) (1964).   That definition, however, was later amended in 1982 to include "a

locomotive, car, vehicle, motor vehicle, vessel, *warehouse*, wharf, pier, dock, yard, property,

facility, instrumentality, or equipment of any kind related to the movement of passengers or

property, or both, regardless of ownership or an agreement concerning use."   49 U.S.C. § 10102

(25)(A) (1982) (emphasis added).   Since 1982, Title 49 has included warehouses and

warehouse-related movement within the definition of "transportation."   49 U.S.C. § 13102(23)

(2008).

   Moreover, V.S.C. can hardly be characterized as "leading" or "often cited;" it was

apparently never appealed to the Ninth Circuit, and it has been cited by only four other cases since

decided.[2]   In the only federal case involving facts somewhat similar to V.S.C., the First Circuit

held that an entity could not be subject to the motor carrier provisions of Title 49 when it did not

engage in any motor vehicle transportation and engaged only in warehousing, e.g., storing goods

transported by others.   PNH Corp. v. Hullquist Corp., 843 F.2d 586, 591 (1st Cir. 1988).   The

---

[2]  Am. Trucking Ass'n, Inc. v. I.C.C., 672 F.2d 850, 851 (11th Cir. 1982) (citing V.S.C. for the definition of the
primary business exemption); Inland Empire Distrib. Sys., Inc. v. Util. & Transp. Comm'n, 112 Wash. 2d 278, 283-84
(1989) (discussing V.S.C. by analogy in analyzing a Washington state regulation); PNH Corp. v. Hullquist Corp., 843
F.2d 586, 591 (1st Cir. 1988) (citing V.S.C. for the proposition that an entity that is a warehouseman only – and not a
motor carrier – is not subject to Title 49); Syracuse Plastics, Inc. v. Guy M. Turner, Inc., 959 F. Supp. 147, 150
(N.D.N.Y. 1997) (citing V.S.C. for the proposition that "it is the transaction at issue in relation to the business which
must be considered, rather than simply the overall percentage of the carrier's business which the transportation
comprises.").

**FOR PUBLICATION**

court held that an entity that was not otherwise a motor carrier could not be subject to Title 49 even if it were engaged in warehousing, which is classified as "transportation" under Title 49.   Id. However, unlike the defendant in Hullquist, All Saints engages in motor vehicle transportation for hire and is a motor carrier under Title 49; its claims that it also engages in "warehousing" do not bring it within Hullquist.

Finally, All Saints' characterization of its business as "warehousing" is questionable.   All Saints does not store goods and does not own a warehouse – it merely transports goods to and from a warehouse owned by St. George.   All Saints itself avers that "100 percent of Defendant All Saints' motor transport involved: (1) transporting warehoused goods between and [sic] the Port and the St. George warehouse; and (2) transporting warehoused goods between the St. George warehouse and the warehouse customer's premises."   (Def. Opp. 15.)   Because All Saints is a motor carrier, and because warehouses and movement related to warehouses are included in the statutory definition of "transportation," All Saints is not "engaged in a business *other than* transportation."   49 U.S.C. § 13505 (emphasis added).   Because All Saints does not fulfill the first requirement of the primary business exemption, it is not exempt under this provision.

There is no dispute of material fact.   As a matter of law, the primary business exemption does not apply to All Saints.

### C. Corporate Families Exemption

The corporate families exemption states that "[n]either the Secretary nor the Board has jurisdiction over transportation of property by motor vehicle for compensation provided by a person who is a member of a corporate family for other members of such corporate family."   49 U.S.C. § 13505(b).   A "corporate family" is a "group of corporations consisting of a parent

**FOR PUBLICATION**

corporation and all subsidiaries in which the parent corporation owns directly or indirectly a 100

percent interest." 49 U.S.C. § 13505(b)(2). The purpose of the corporate families exemption is

to allow "a corporation [to] set up its own subsidiary for the sole purpose of providing

transportation for itself and its affiliates and still claim exempt status." Am. Trucking Ass'n v.

I.C.C., 672 F.2d 850, 851-53 (11th Cir. 1982).

Defendants contend that they come under the "corporate families" exemption of Title 49

because they provide transportation only to St. George, another member of their corporate family.

(Def. Opp. 17.)[3] Plaintiffs respond that defendants do not come under the "corporate families"

exemption because All Saints and St. George do not meet the statutory definition of a "corporate

family." (Pl. Br. 10.)

Although defendants initially claimed that All Saints was a wholly-owned subsidiary of St.

George (Def. Mot. to Dismiss Br. 3; Costa Cert. ¶ 1, April 17, 2009), defendants now admit that

"All Saints is not owned by St. George and is not a subsidiary thereof." (Def. Statement of Facts

¶ 12; see also Def. Opp. 23-24.) Because All Saints is not a subsidiary of St. George, the

transportation services it provides to St. George are not provided to a member of its "corporate

family."

There is no dispute of material fact. As a matter of law, the corporate families exemption

does not apply to All Saints.

**II. The Truth in Leasing Regulations**

All Saints, as an authorized motor carrier registered under Title 49 not subject to any

statutory exemption, is required to comply with the Regulations. The Regulations, however, do

---

[3] While defendants mention this argument in passing in their summary judgment papers, they relied on it heavily in their motion to dismiss. (Def. Mot. to Dismiss Br. 1, 3-4; Def. Mot. to Dismiss Reply 3, 5.)

**FOR PUBLICATION**

not specify the appropriate standard for compliance.   Plaintiffs point to recent decisions holding

that the "literal compliance" standard must be used for determining compliance with the

Regulations, rather than the "substantial compliance" standard.   (Pl. Reply 9.)   See

Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc., 541 F.3d 1278, 1284 n.7 (11th

Cir. 2008); Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., 508 F. Supp. 2d 972,

981 (D. Utah 2007).   But see Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., No.

00-0258, 2004 WL 5376211, at *3 (W.D. Mo. Jan. 7, 2004).   Because requiring only substantial

compliance might defeat the Regulations' goal of preventing large carriers from taking advantage

of owner-operators due to uneven bargaining power, Owner-Operator Indep. Drivers Ass'n v.

Swift Transp. Co., Inc., 367 F.3d 1108, 1110 (9th Cir. 2004), the Court is persuaded that literal

compliance is the appropriate standard.   The Court will use this standard to evaluate All Saints'

compliance.

Each of the plaintiffs entered into "Independent Contract[or] Agreement[s]" ("original

lease") with All Saints; these agreements were identical in all material respects.   (Pl. Statement of

Facts ¶ 60.)   On or about March 6, 2009, after litigation in this case had begun, All Saints entered

into a revised "Independent Contract Agreement" ("revised lease") with plaintiffs; these

agreements were identical in all material respects. (Pl. Statement of Facts ¶ 61; Def. Resp. to Pl.

Statement of Facts ¶ 61.)   Plaintiffs allege that the original and revised leases failed to meet five of

the requirements of 49 C.F.R. § 376.12.

**A. Identification of Compensation Rates: § 376.12(d)**

Section 376.12(d) requires that:

**FOR PUBLICATION**

> The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease.   Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier . . . .   The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease.

49 C.F.R. § 376.12(d).   Section 376.2(i) defines an addendum as a "supplement to an existing lease which is not effective until signed by the lessor and lessee."   49 C.F.R. § 376.2(i).

Plaintiffs contend that All Saints' original and revised leases fail to clearly state compensation terms in violation of § 376.12(d).   (Pl. Br. 18.)   Defendants counter that All Saints provided addenda to the leases and a revised lease that identify the compensation rates.   (Def. Opp. 30.)

The original leases do not state the "amount to be paid" on their face; rather, they state only that All Saints "agrees to pay and [plaintiff driver] agrees to accept as sole and full compensation for its equipment and services that *flat amount agreed by the parties* for the lease period."   (Compl., Ex. A at 4:8-13 (emphasis added).)   Courts have found that leases containing only percentages or other rates are unclear for purposes of the Regulations.   See, e.g., Cunningham v. Lund Trucking Co., 662 F. Supp. 2d 1262, 1272 (D. Or. 2009) (clause in lease stating "[c]arrier agrees to pay Contractor 85%, to be computed as to each trip" and list of applicable deductions violates 49 C.F.R. § 376.12(d) because it fails to specify how the payment amount was calculated).   The original lease in this case does not even mention percentages or rates, but merely alludes to a "flat amount."

13

**FOR PUBLICATION**

Defendants concede that the original leases do not state the amount to be paid, but assert that All Saints fulfilled the requirements of 49 C.F.R. § 376.12(d) by delivering addenda to the plaintiffs that included compensation terms.[4]   (Def. Opp. 30.)   Defendants submit a September 21, 2009 memorandum on St. George letterhead in which the new rates for different types of deliveries, fuel charges and tolls are listed.   (Costa Cert., Ex. A, June 18, 2010.)[5]   While this memorandum states "the amount to be paid" on its face, it still fails to comply with the Regulations.   Section 376.12(d) requires that the "addendum be delivered to the lessor *prior* to the commencement of any trip in the service of the authorized carrier." 49 C.F.R. § 376.12(d) (emphasis added).   In this case, however, defendants themselves appear to concede that these memoranda were delivered *after* trips were begun, as the original lease agreements were entered into from 2004 to 2008 (Compl. ¶¶ 8-12), and these memoranda were delivered in late 2009.   Finally, these memoranda were not signed by plaintiffs, as required by 49 C.F.R. § 376.12(d).   (Costa Cert., Ex. A, June 18, 2010.)

Defendants assert that the revised leases, entered into on March 6, 2009, remedy the violations and contain two compensation clauses.   Even if the Court were to consider these later leases, they do not remedy All Saints' violations of the Regulations.   The first compensation clause reads: "[All Saints] agrees to pay and contractor agrees to accept as

---

[4] Defendants also reference the depositions of the plaintiffs, arguing that plaintiffs themselves admit that they received memoranda to the lease stating the compensation terms.   (Def. Opp. 30.)   Presumably, these are references to the same "addenda" to which defendants refer.

[5] Plaintiffs argue that this Court should strike the June 18, 2010 Certification of Marie Costa under the "sham affidavit doctrine" because it conflicts with her earlier certifications.   (Pl. Reply 1-3 (citing Jimenez v. All American Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007)).)   Because the Court does not rely on any of the statements made by Ms. Costa in her June 18, 2010 certification, and only takes notice of one exhibit attached thereto, there is no need to strike the certification from the record.

**FOR PUBLICATION**

sole and full compensation for the lease of its equipment and services the amount agreed by the parties for the lease period as more particularly set forth on Schedule A annexed to this agreement." (Cohen Cert., Ex. H at 3, May, 14, 2010.) Schedule A provides: "[e]very time a driver hooks up to a container he is paid $65.00," subject to certain exceptions. (Id. at 7.) The schedule further notes that local deliveries within New Jersey would be "19% FSCH" and out of state deliveries would be "23% FSCH." (Id.) FSCH is not defined. The second compensation clause is the same clause contained in the original lease: "[All Saints] agrees to pay and [plaintiff] agrees to accept as sole and full compensation for its equipment and services that flat amount agreed by the parties for the lease period." (Id. at 4.) This revised lease does not remedy the original lease's failure to clearly state compensation terms, as it still does not state "the amount to be paid" on its face. If anything, it confuses the issue further because it includes two differing compensation clauses, each of which purports to be the sole compensation terms and each of which establishes a different method of compensation.

There is no disputed material fact. The original leases and the revised leases violate § 376.12(d) by failing to state the amount to be paid on the face of the agreements, and All Saints failed to remedy this violation through legitimate addenda. Summary judgment is granted to plaintiffs.

### B. Compensation Documentation Provisions: § 376.12(g)

Section 376.12(g) reads:

Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges

**FOR PUBLICATION**

> are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed.

49 C.F.R. § 376.12(g).

Plaintiffs contend that All Saints' lease agreements contain no provision allowing plaintiffs to examine copies of documents from which rates and charges are computed.   (Pl. Br. 18.) Defendants concede that "the leases do not provide the notice required by [49 C.F.R. § 376.12(g)]."   (Def. Opp. 31.)   Defendants assert (without support) that the plaintiffs stated that they had never asked for documentation.   (Id.)   The leases must contain provisions allowing the lessor to view documentation regarding methods of compensation, regardless of the lessors' requests to view this documentation or All Saints' responses to these requests.   The leases do not contain such provisions.

There is no disputed material fact.   The leases violate § 376.12(g) by failing to include a provision that allows the drivers to examine computation documentation.   Summary judgment is granted to plaintiffs.

### C. Documentation for Insurance: § 376.12(j)(2)

> If the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier, the lease shall specify that the authorized carrier will provide the lessor with a copy of each policy upon the request of the lessor. Also, where the lessor purchases such insurance in this manner, the lease shall specify that the authorized carrier will provide the lessor with a certificate of insurance for each such policy. Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable.

49 C.F.R. § 376.12(j)(2).

16

**FOR PUBLICATION**

St. George purchases workers' compensation insurance coverage on behalf of plaintiffs. (Pl. Statement of Facts ¶ 84; Def. Resp. to Pl. Statement of Facts ¶ 84.)   All Saints then deducts three percent from each plaintiff's gross compensation to account for this insurance.   Id. Plaintiffs contend that All Saints' lease agreements contain no provision allowing plaintiffs to examine copies of documents for which insurance rates and charges are computed.   (Pl. Br. 18.) Defendants concede that "the leases do not provide the notice required by [49 C.F.R. § 376.12(j)(2)]."   (Def. Opp. 33.)   Defendants again assert (without support) that the plaintiffs stated that they had never asked for this documentation.   (Def. Opp. 33.)   Regardless of the lessor requests to view this documentation or All Saints' responses to these requests, the leases must contain provisions allowing the lessors to view insurance documentation.   These leases did not contain such provisions.

There is no disputed material fact.   The leases violated § 376.12(j)(2) by failing to include a provision that allows the drivers to examine insurance documentation.   Summary judgment is granted to plaintiffs.

### D. Charge-back Computations and Documentation: § 376.12(h)

The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h).

Both the original and the revised lease agreements contain the following paragraph:

Contractor authorizes carrier to withhold, from any monies due to the contractor, any amount due for repairs or maintenance, gasoline, fuel, oil, labor, tires, *insurance* or merchandise purchased by [All Saints] or it's [sic] employee,

17

**FOR PUBLICATION**

> advanced as well as any amount for which the carrier may be liable by failure of
> contractor to conform to the terms of this agreement, together with a service charge
> not exceeding that prescribed by law.[6]

(Compl., Ex. A at 2:30-37; Cohen Cert., Ex. H at 2-3, May, 14, 2010 (emphasis added).)

Plaintiffs contend that the lease agreements fail to "specify how the amount of any charge-back for workers' compensation [insurance] will be computed."  (Pl. Br. 20.)   Without addressing whether the leases contain the required information, defendants counter that the amount charged for this insurance appears clearly on the paystubs issued to plaintiffs.   (Def. Opp. 33-34.)[7]

Courts have found that, even if the name and amount of the charge-back is listed, the method by which the amount of the charge-back is computed is an essential component in fulfilling the requirements of 49 C.F.R. § 376.12(h).   See Owner-Operator Indep. Drivers Ass'n v. Landstar Sys. Inc., 541 F.3d 1278, 1292-93 (11th Cir. 2008) (listing of a flat-fee item was not sufficient to satisfy § 376.12(h); how the amount was computed was necessary to determine validity of the charge) (collecting cases). Because the leases specify the items that can be withheld from the driver, but do not indicate how the amounts charged for items would be computed, they do not fulfill the requirements of § 376.12(h).   See Landstar, 541 F.3d at 1292-93.

There is no disputed material fact.   The leases violate § 376.12(h) by failing to include a provision that allows the drivers to examine documentation regarding charge-backs.   Summary judgment is granted to plaintiffs.

---

[6]  The revised lease adds the following sentence to this paragraph: "Any amount that [All Saints] advances as set forth in the pervious [sic] paragraph and any amount due for repairs or maintenance."   (Cohen Cert., Ex. H at 3, May 14, 2010.)

[7] Defendants also assert that All Saints is prepared to provide this information in discovery. (Def. Resp. to Pl. Statement of Facts ¶¶ 88-90.)   The leases, however, must contain provisions allowing the owner-operators to view documentation regarding charge-backs, regardless of the owner-operators' "awareness" and regardless of All Saints' willingness to provide such information at a later date.   These leases do not contain such provisions.

FOR PUBLICATION

### E. Duration of Lease: §§ 376.11(a)-(b), 376.12(b)

There are two provisions of the Regulations that address the duration of leases.   First, 49 C.F.R. § 376.11 directs that receipts "identifying the equipment to be leased and stating the date and time of day possession is transferred" must be provided at the time of transfer.   49 C.F.R. § 376.11(b).   In addition, 49 C.F.R. § 376.12(b) states that the written lease "shall specify the time and date or the circumstances on which the lease begins and ends.   These times or circumstances shall coincide with the times for the giving of receipts required by § 376.11(b)."   49 C.F.R. § 376.12(b).

Plaintiffs contend that both the original and revised leases fail to comply with the Regulations because they do not have a specific start and end date, but instead "contemplate[] multiple effective lease terms."   (Pl. Br. 21-22.)   Both the original and revised leases stipulate that: "[c]ontractor leases to [All Saints] the equipment… for the time period as are [sic] from time to time agreed to between the parties.   The equipment shall be properly license [sic] and have proper permits for operation in the state(s) of operation."   (Compl. Ex. A at 1:13-17; Cohen Cert., Ex. H at 1, May, 14, 2010.)   Defendants do not dispute that neither the original nor revised leases specify the time and date, or circumstances on which the lease begins and ends.   (Def. Opp. 32-33; Def. Statement of Facts ¶ 28.) Defendants assert that the plaintiffs testified that they understood the contract could be terminated by them at will.   (Def. Opp. Br. 32; Def. Statement of Facts ¶¶ 30-31.)   The leases must contain provisions specifying the duration of the leases, regardless of the lessor's "understanding" regarding the duration of the leases.   The leases do not contain such a provision.

19

**FOR PUBLICATION**

There is no disputed material fact.   The leases violate §§ 376.11(a)-(b), 376.12(b) by failing to include the time and date, or circumstances on which the leases begin and end. Summary judgment is granted to plaintiffs.

### IV. Liability of St. George's Warehouse

Plaintiffs contend that, despite the fact that they have only entered into lease agreements with All Saints, this Court should find St. George liable for violations of the Regulations as well. (Pl. Br. 13.)   Because St. George is not a party to the lease agreements, plaintiffs argue that St. George is liable through alter-ego liability or affiliate liability.

### A. Alter-Ego

Plaintiffs argue that St. George is an alter ego of All Saints, and that, because of this relationship, St. George should also be liable for All Saints' violations of the Regulations. . (Compl. ¶ 17; Pl. Br. 13.)   The Court, however, presumes that plaintiffs intended to argue the reverse, namely that All Saints is an alter ego of St. George, in order to pierce the corporate veil separating All Saints and St. George and impose liability on St. George (a nonparty to the leases). Veil-piercing would only be possible in this context if All Saints is the subservient corporation, the alter ego, of St. George, the dominant corporation.   Shotmeyer v. New Jersey Realty Title Ins. Co., 195 N.J. 72, 86-87 (2008).   The Court construes plaintiffs' argument in this manner. Defendants contend that the corporate relationship between All Saints and St. George does not merit a finding of alter ego liability under New Jersey law.

American corporate law is premised on the idea that "a corporation is a separate entity from its shareholders."   Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangers, Inc., 195 N.J. 457, 472 (2008) (citing State, Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983).

FOR PUBLICATION

However, under certain circumstances, courts may disregard the corporate form and pierce the corporate veil to hold the shareholders responsible for the actions of the corporation.   Id.; see also Shotmeyer, 195 N.J. at 86-87.   Indeed, these "principles are equally applicable when the shareholder is, in fact, another corporation."   Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J.Super. 160, 198 (App. Div. 2006) (citing Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).   In such cases, plaintiffs must show "that a subsidiary was a mere instrumentality of the parent corporation."   Shotmeyer, 195 N.J. at 86. (citation omitted).

Piercing the corporate veil under New Jersey law is appropriate where one corporation so dominated another corporation that it had no separate existence and was merely a conduit of another corporation, and the dominant corporation used the controlled company to perpetuate a fraud or injustice.   Ventron, 94 N.J. at 501.   The relevant factors in determining whether one corporation is organized and operated as to make it a mere instrumentality of another corporation include: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) non-functioning of other officers or directors; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders. Verni, 387 N.J.Super. at 200 (citing Bd. of Trs. v. Foodtown, Inc., 296 F.3d 164, 172 (3d Cir. 2002)).

Plaintiffs contend that they have established that St. George dominates All Saints. Defendants argue that plaintiffs have failed to make a showing of the threshold requirement for finding an alter ego relationship because they have failed to show that St. George is a shareholder of All Saints.   (Def. Opp. 23-25.)   Defendants argue that, because St. George holds no stock in

**FOR PUBLICATION**

All Saints (Def. Opp. 24), the corporate veil between St. George and All Saints cannot be pierced. This argument is without merit.   Because piercing the corporate veil does not require a parent-subsidiary relationship, but only requires that one corporation dominate the other, Verni, 387 N.J.Super. at 198 (citing Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001), an alter ego relationship could exist whether or not St. George is a shareholder of All Saints.

As to the first factor, plaintiffs allege that All Saints is grossly undercapitalized because All Saints' stockholder equity is only 0.63% of revenue, it has no assets, and the only deposits made to All Saints' bank account come from St. George.   (Pl. Br. 12 citing Pl. Statement of Facts ¶¶ 22, 23; Def. Resp. to Pl. Statement of Facts ¶¶ 22, 23.)   As to the second factor, plaintiffs do not explicitly note which formalities All Saints and St. George have allegedly disregarded.   In fact, plaintiffs note that All Saints maintains its own bank account and regularly files paperwork with the Secretary of State of Delaware.   (Pl. Br. 12.)   As to the third factor, plaintiffs argue that All Saints does not pay dividends, as All Saints' financial reports make no mention of dividend payments.   (Pl. Br. 12; Cohen Cert., Ex. I, ISOP 00667, June 18, 2010.)   Concerning the fourth factor, plaintiffs charge that All Saints is chronically insolvent because it survives on a weekly cash gift from St. George.   (Pl. Br. 12.)   Considering the fifth factor, plaintiffs allege that All Saints has no employees, past or current officers, or a board of directors, or, alternatively, that Anthony Fortunato is the sole director of both All Saints and St. George.   (Pl. Br. 12-13 citing Pl. Statement of Facts ¶¶ 16-18.)   Concerning the sixth factor, the plaintiffs do not allege that All Saints fails to keep corporate records.   Finally, as to the seventh factor, plaintiffs allege that since All Saints does not receive revenue from its contracts with plaintiffs, All Saints is a façade for St. George.   (Pl. Br. 13.)

FOR PUBLICATION

While defendants do not address the factors used to evaluate domination explicitly, they note that All Saints in fact has an income, earns a small profit each year, pays taxes yearly, and has retained earnings of over $12,000.   (Def. Resp. to Pl. Statement of Facts ¶ 21.)   Defendants also note that All Saints has officers because Anthony Fortunato is an officer of All Saints.   (Def. Resp. to Pl. Statement of Facts ¶ 16.)

The second element for veil piercing requires plaintiff to prove that the "adherence to the fiction of separate corporate existence would perpetuate a fraud or injustice, or otherwise circumvent the law.   Verni, 387 N.J.Super. at 200.   Plaintiffs do not make an explicit argument regarding how St. George uses All Saint for these ends.

While plaintiffs have shown that All Saints is grossly undercapitalized, does not pay dividends, and does not have a functioning board of directors, they have not established the other factors necessary to find that All Saints is a mere instrumentality of St. George.   Moreover, even if they had established that All Saints is organized and operated so as to make it a mere instrumentality of St. George, plaintiffs have failed to demonstrate the second prong of the analysis.   They have provided no evidence that St. George is using All Saints to perpetrate fraud, to accomplish injustice, or to circumvent the law.   Because plaintiffs have failed to satisfy the New Jersey test for finding an alter ego relationship, defendants are entitled to summary judgment.

**B. Affiliation**

Plaintiffs assert that "entities and individuals 'affiliated' with a registered motor carrier may be liable . . . for violations of the [Regulations]."   (Pl. Reply 7.)   Plaintiffs claim that St. George is sufficiently affiliated with All Saints to impose affiliate liability on St. George for All Saints' violations of the Regulations.   (Pl. Reply 8.)   Defendants contend that the affiliate

**FOR PUBLICATION**

liability argument must be disregarded entirely because it was not timely raised by plaintiffs, and also argue that it must fail on the merits because St. George is not a party to the leasing agreements. (Def. Reply 11-12.)

Federal district courts have held that, under certain circumstances, an "affiliate" of a motor carrier may be required to comply with the Regulations.   See, e.g., Owner-Operator Indep. Drivers Assoc., Inc. v. United Van Lines, LLC, Civ. No. 06-219, 2006 WL 1877081, at *5 (E.D. Mo. July 6, 2006); Owner-Operator Indep. Drivers Assoc., Inc. v. Ledar Transp., Civ. No. 00-0258, 2004 WL 5376211, at *7 (W.D. Mo. Jan. 7, 2004); Owner-Operator Indep. Drivers Assoc., Inc. v. Arctic Express, Inc., 87 F. Supp. 2d 820, 828 (S.D. Ohio 2000) (affirming Dart Transit Co. – Petition for Declaratory Order, 9 I.C.C. 2d 701 (June 24, 1993)).   In deciding whether an entity is an "affiliate," courts take into account whether the two entities had common ownership and officers.   Arctic Express, 87 F. Supp. 2d at 829.   The purpose of imposing the Regulations on affiliated entities is to prevent registered carriers from "taking advantage of a potential loophole" where "a registered carrier could create a non-registered business entity and thereby avoid the regulations promulgated under" Title 49.   Arctic Express, 87 F. Supp. 2d at 828-29, see also United Van Lines, 2006 WL 1877081, at *5.

Plaintiffs argue that St. George and All Saints have common ownership, noting that the two companies are owned by the same person, Anthony Fortunato.[8]   While Anthony Fortunato is an officer of both All Saints and St. George plaintiffs themselves have noted that another corporation, and not Anthony Fortunato, owns St. George.

---

[8] Plaintiffs also argue that St. George is an affiliate because certain corporate tasks, such as payment of expenses, are carried out by employees of St. George.   (Pl. Reply 8.)   This has no bearing on the "affiliate" analysis.

**FOR PUBLICATION**

Defendants counter that the Court should disregard plaintiffs' affiliation argument because it "was not put forth in [plaintiffs'] pleading[s], nor even asserted in their initial motion papers," and it is "well established that a claim … that was not raised in a party's opening brief cannot be belatedly raised for the first time in a reply brief."   (Def. Reply 10-11.)   Defendants also argue that the affiliate liability argument must fail because St. George, as a nonparty to the leases, cannot be held liable for violations of the Regulations contained in the leases.   (Def. Reply 11-13.)

Defendants' argument regarding the untimeliness of the affiliation argument fails.   Not only did plaintiffs allege in their complaint that "[All Saints] and [St George] are affiliated through ownership (one of the other) or other common ownership," (Compl. ¶ 17) but a court may enter summary judgment on "a ground not mentioned in the motion if the parties have had an adequate opportunity to argue and present evidence on that point."   10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2719 (3d ed. 1998).   As demonstrated by plaintiffs' argument in favor of and defendants' arguments against imposing affiliate liability, the parties have had an opportunity to argue and present evidence on this point.

Defendant's argument that St. George is not a party to the leases is more persuasive. While the entity found to be an affiliate in both Dart and Arctic Express was a party to the lease agreement, "[p]laintiffs do not allege that [defendants] are a party to a leasing agreement, or otherwise independently violate any provision of the Truth-in-Leasing regulations."   United Van Lines, 2006 WL 1877081, at *5.   The court in United Van Lines, found this fact dispositive and chose not to extend Dart and Arctic Express.   Id.

Furthermore, plaintiffs have not made an adequate showing of affiliation to impose affiliate liability on St. George.   They have not shown that All Saints and St. George are

**FOR PUBLICATION**

commonly owned, even if they share a common officer in Anthony Fortunato.   More

fundamentally, they have not demonstrated that holding St. George liable would fulfill the purpose

of affiliate liability.   Even if St. George had created All Saints with the intent to avoid the

Regulations, St. George is not a registered carrier, while All Saints *is* a registered carrier.   And, as

discussed, All Saints is subject to the Regulations and may be held liable for any violations.

Because there is no danger of a registered carrier avoiding the Regulations and because to hold St.

George liable would not close any "potential loophole[s]" in the equitable application of the

Regulations, St. George is not subject to affiliate liability for All Saints' violations of the

Regulations.   See United Van Lines, 2006 WL 1877081, at *5.

### V. Remedies

#### A.  Declaratory Judgment

Plaintiffs ask the Court for a declaratory judgment that the leases entered into by the

plaintiffs and All Saints are in violation of the Regulations.   (Pl. Br. 2.)   Defendants argue that

two of the alleged violations should be dismissed as a matter of law and that three of the alleged

violations raise genuine issues of material fact that preclude a judgment that the Regulations are

being violated; they do not, however, specify which violations should be dismissed and which

raise genuine issues of material fact.   (Def. Opp. 29-35.)

The Declaratory Judgment Act provides:

In a case of actual controversy within its jurisdiction . . . any court of the United
States, upon the filing of an appropriate pleading, may declare the rights and other
legal relations of any interested party seeking such declaration, whether or not
further relief is or could be sought.

**FOR PUBLICATION**

28 U.S.C. § 2201.   "[T]here must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" Ashcroft v. Mattis, 431 U.S. 171, 172 (1977) (citation omitted).   Furthermore, declaratory relief is appropriate when:

> [T]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Maryland Cas. Co. v. Pacific Coal & Oil, Co., 312 U.S. 270, 273 (1941).

There is an actual controversy concerning whether the leases entered into between plaintiffs and All Saints violate the Regulation.   Because these leases are still in force, the case is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.   Because the Court has already found that defendants are in violation of the Regulations, plaintiffs are entitled to a declaratory judgment to that effect.

### B.  Injunctions

Under Title 49, parties may obtain injunctive relief for violations of 49 U.S.C. §§ 14102-14103, the sections under which the Regulations are promulgated:

> A person injured because a carrier or broker providing transportation or service . . . does not obey an order of the Secretary or the Board . . . may bring a civil action to enforce that order . . . .   A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

49 U.S.C. § 14704(a)(1).

Only a plaintiff who has achieved actual success on the merits may obtain a permanent injunction.   Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).   A successful plaintiff must demonstrate the following to obtain a permanent injunction:

**FOR PUBLICATION**

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).   In granting injunctive relief, the injunction should be "no broader than that necessary to correct the violation." Temple Univ. v. White, 941 F.2d 201, 215 (3d Cir. 1991); see also In re Diet Drugs, 369 F.3d 293, 307 (3d Cir. 2004) ("[A]ny injunction a court issues must be commensurate with the wrong it is crafted to remedy.").

The first two prongs of the permanent injunction test are often considered together. Although irreparable injury and inadequacy of legal remedy are not always the same, demonstrating that plaintiff will suffer irreparable injury is a "common method" of showing there is no adequate legal remedy.   10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2944 (3d ed. 1998); see also Crane v. Ind. High Sch. Athletic Ass'n, 975 F.2d 1315, 1326 (7th Cir. 1992) ("Irreparable injury . . . is one basis for showing the inadequacy of the legal remedy" (citation omitted).)

The burden of future litigation "might, in and of itself, constitute irreparable harm" because a party should not have to continue to re-litigate issues that have already been decided.   Se. Penn. Transp. Auth. v. Penn. Public Util. Comm'n, 210 F. Supp. 2d 689, 726 (E.D. Pa. 2002). Additionally, a permanent injunction is appropriate where "a full evidentiary hearing disclosed a history of repetitive, flagrant violations, suggesting a real danger of recurrent evasions." U.S. v. Spectro Foods Corp., 544 F.2d 1175, 1182 (3d Cir. 1976).

**(1) Injunction Regarding Regulatory Compliance**

FOR PUBLICATION

Plaintiffs contend that they are entitled to a permanent injunction enjoining All Saints from engaging in transportation activities until they enter into leases that comply with the Regulations. (Pl. Br. 23-27.)   Defendants counter that plaintiffs have not met the burden for obtaining a permanent injunction on this issue.   (Def. Opp. 36-38.)   Defendants also reference this Court's denial of plaintiffs' application for a preliminary injunction in support of their assertion that plaintiffs are not entitled to a permanent injunction.   (Id. at 37-38.)

Because, by defendants' own admission, both the original and revised leases, as well as the "addenda" to the leases, violate the Regulations, there is evidence that All Saints has engaged in repeated and flagrant violations of the Regulations.   If plaintiffs are not granted a permanent injunction, they may be forced to return to court to file claims for relief every time they contract with All Saints.   This burden of future litigation constitutes irreparable harm and demonstrates that plaintiffs have no adequate remedy at law.

The balance of hardships weighs in favor of plaintiffs.   All Saints is already required by law to comply with the Regulations; if an injunction is granted, it should suffer no hardship in bringing its leases into conformity with the law.   By contrast, if an injunction is denied, plaintiffs may well suffer hardship as a result of leases that violate the Regulations, as they will be denied basic employment information such as the duration of their work and the amount of their compensation.

Finally, the public interest would be served by an injunction, as the Regulations seek to prevent large carriers from taking advantage of owner-operators due to uneven bargaining power. Swift, 367 F.3d at 1110.   Because All Saints is a carrier that is failing to provide leases that comply with the Regulations, the public interest will be served by ensuring that All Saints fully

**FOR PUBLICATION**

complies with the Regulations.

Defendants' assertion that this Court's denial of a preliminary injunction compels a denial of a permanent injunction is again off-target.   Differing tests are employed in the preliminary injunction and permanent injunction contexts, and "it frequently happens that a party is denied a preliminary injunction pending the disposition of the lawsuit but ultimately prevails on the merits and is awarded a permanent injunction as part of the final judgment in the case." Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996).

Plaintiffs are entitled to a permanent injunction.   While plaintiffs request an injunction to prevent All Saints from engaging in certain transportation activities until leases complying with the Regulations are executed, such relief would impose a significant burden on All Saints. It would effectively prevent All Saints from conducting business for some period of time.   The Court will not impose such a requirement.   Instead, the Court permanently enjoins All Saints from violating the Regulations.

### (2) Injunction Regarding Retaliation and Harassment

Plaintiffs contend that they are entitled to a permanent injunction enjoining All Saints from engaging in acts of retaliation and harassment against plaintiffs.   Plaintiffs point to the termination of four individual plaintiffs as independent contractors for All Saints, and allege that these terminations were the result of plaintiffs' earlier requests for compliant leases.   (Compl. ¶ 19; Pl. Br. 27-28.)   Defendants counter that the terminations were undertaken for valid economic reasons.   (Def. Opp. 34-36.)

Plaintiffs offer nothing except unsupported allegations to support their claim that All Saints retaliated against plaintiffs as a result of plaintiffs' earlier requests for changes to their

**FOR PUBLICATION**

leases.   Defendants offer nothing but self-serving statements regarding the circumstances of the terminations.   Neither side has satisfactorily established any material facts surrounding these allegations.   Because a genuine issue of material facts remains as to whether and why such retaliation and harassment occurred, summary judgment on this issue is inappropriate.

### C.  Attorneys' Fees and Expenses

Should plaintiffs seek to recover attorneys' fees and expenses at the conclusion of this litigation, they may file an appropriate motion pursuant to Local Civil Rule 54.2.

### CONCLUSION

Plaintiffs' Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED because All Saints is an authorized and registered motor carrier under Title 49 of the U.S. Code, not subject to any statutory exemption, and subject to the federal Truth in Leasing Regulations promulgated under Title 49.

Plaintiffs' Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED because as the Court finds that the "Independent Contract[or] Agreement[s]" entered into by plaintiffs and All Saints are leases subject to the Truth in Leasing Regulations.

Plaintiffs' Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED because the leases entered into between plaintiffs and All Saints violate the Regulations as follows:

(1) violation of the compensation provision of 49 C.F.R. § 376.12(d);
(2) violation of the compensation documentation provision of 49 C.F.R. § 376.12(g);
(3) violation of the signed lease of a specific duration provision of 49 C.F.R. §§ 376.11(a)-(b) and 376.12(b));

**FOR PUBLICATION**

     (4) violation of the workers' compensation insurance documentation provision of
        49 C.F.R. § 376.12(j)(2); and

     (5) violation of the chargeback provision of 49 C.F.R. § 376.12(h).

Plaintiffs' Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED insofar as All Saints is permanently enjoined from violating the conditions and requirements of the Regulations

Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED insofar as St. George is not liable for All Saints' violations of the Truth in Leasing Regulations.

Plaintiffs' and Defendants' Motions for Summary Judgment with respect to retaliation and harassment are DENIED.

**s/ William H. Walls**

United States Senior District Judge
