FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PORT DRIVERS FEDERATION 18, INC., FLORNCIO HERNANDEZ, JULIAN HERNANDEZ, JOSE LANDA, NELSON RODRIGUEZ, and JUAN MARTE, <br><br> Plaintiffs, <br><br> v. <br><br> ALL SAINTS and ST. GEORGE WAREHOUSE, INC., <br><br> Defendants. | **OPINION and ORDER** <br><br> Civ. No. 09-868 (WHW) |

**Walls, Senior District Judge**

Port Drivers Federation 18, Inc., Florencio Hernandez, Julian Hernandez, Jose Landa, Nelson Rodriguez, and Juan Marte ("plaintiffs" or "contractors") contend that All Saints Express, Inc. ("All Saints") has failed to comply with the Federal Truth in Leasing Regulations ("Regulations") in violation of this Court's October 18, 2010 injunction. On January 25, 2011, All Saints was ordered to show cause why it should not be held in contempt of court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are independent owners and operators of trucks who lease their trucking equipment and driving services to defendant All Saints. All Saints' sole business is transporting the cargo of St. George's customers between ports in New York and New Jersey and the St. George warehouse, or directly from the St. George warehouse to customers of St. George.

1

**FOR PUBLICATION**

Plaintiffs filed a complaint which alleged that the leases that they had entered into with All Saints violated of the Federal Truth in Leasing Regulations. Both plaintiffs and defendants moved for summary judgment. On October 18, 2010, the Court granted summary judgment in plaintiffs' favor finding that the leases entered into between plaintiffs and All Saints violated: (1) the compensation provision of 49 C.F.R. § 376.12(d), (2) the compensation documentation provision of 49 C.F.R. § 376.12(g), (3) the signed lease of a specific duration provision of 49 C.F.R. §§ 376.11(a)-(b) and 376.12(b), (4) the workers' compensation insurance documentation provision of 49 C.F.R. § 376.12(j)(2), and (5) the chargeback provision of 49 C.F.R. § 376.12(h). The Court also permanently enjoined All Saints "from violating the conditions and requirements of the Regulations." Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc., No. 09-868, 2010 WL 4116500, at *18 (D.N.J. Oct. 18, 2010).

Plaintiffs contend that despite the October 18, 2010 order, All Saints has failed to comply with the Regulations. Specifically, they contend that All Saints has not entered into compliant leases and instead has submitted two potential leases to plaintiffs that violate the Regulations.

## STANDARD OF REVIEW

"A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." Marshak v. Treadwell, 595 F.3d 478, 485 (3d Cir. 2009) (citation omitted). Any "ambiguities [in the order] must be resolved in favor of the party charged with contempt." John T. ex rel Paul T. v. Delaware Cnty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003). While courts should "hesitate to adjudge a defendant in contempt when there is ground to doubt the wrongfulness of the conduct," the defendant's alleged behavior need not be willful to be found in violation of the

**FOR PUBLICATION**

applicable order because "good faith is not a defense to civil contempt." F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010). A court should, however, evaluate the steps the defendant took to comply with the order because a defendant may not be held in contempt if it can "show that it (1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" Id. at 591.

## DISCUSSION

All Saints does not challenge the validity of the order or their knowledge of the order. Instead, they contend that they have fully complied with the issued injunction.

**Insurance Provision**

49 C.F.R. § 376.12(j)(1) states:

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to 49 U.S.C. § 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

*Public Protection*

Plaintiffs contend that the insurance provisions in All Saints' proposed lease fail to state All Saints' legal obligation to maintain insurance for the protection of the public. All Saints maintains that Section 11(B) of the proposed lease satisfies § 376.12(j)(1). Section 11(B) states "[w]hile the lease Equipment leased hereunder is under the exclusive possession, control and use of ASE, ASE shall assume complete responsibility for the operation of the Equipment leased under this Agreement for the duration of this Agreement."[1] (Pl. Ex. K, Proposed Lease, at 6.)

---

[1] All Saints also argues here, and throughout its brief, that the alleged violation is of a provision that was not at issue in the Court's October 18, 2010, summary judgment order. Because the Court enjoined All Saints from violating the

3

**FOR PUBLICATION**

While All Saints claims to maintain a $5 million liability policy, there is no language to this effect in the proposed lease. Instead, the language All Saints points to states that All Saints will be responsible for the operation of the equipment when it is in All Saints' possession. There is no mention of All Saints carrying any insurance at all. The first sentence of Section 11(B) should read as follows:

> While the Equipment leased hereunder is under the exclusion possession, control and use of ASE, ASE shall assume complete responsibility, including insurance for the protection of the public, for the operation of the Equipment leased under this Agreement for the duration of this Agreement.

Such language comports with the regulations.

*Contractor Insurance*

Plaintiffs also contend that the lease fails to clearly state the types of insurance that the contractor is required to maintain. The proposed lease requires the contractors to maintain the insurance listed in Schedule B and requires the contractors to provide All Saints with proof of insurance "for the equipment and personnel, including, but not limited to, vehicle liability and bobtailing." (Pl. Ex. K, Proposed Lease, at 6.) Schedule B states that the contractor must maintain "BOBTIAL [sic] /DEAD HEAD-NON TRUCKING COVERAGE." (Pl. Ex. K, Proposed Lease, at 13.) All Saints contends that Schedule B is specific and requires that the contractors purchase Bobtail/Dead Head-Non Trucking insurance only. Plaintiffs argue that the inclusion of the phrase "including, but not limited to" renders the provision ambiguous.

Schedule B clearly explains that the only insurance the contractor is required to obtain is bobtail/dead head-non trucking coverage.[2] There is no violation of the Regulations.

---

Regulations, the argument that they had not previously violated a particular provision does not bear on a determination of whether they are currently violating a provision of the Regulations.

[2] A bobtail is a truck without a trailer and bobtail insurance covers "those times when the truck [is] being used for non-business related transportation, i.e., not involving the movement of a trailer, container, or material, such as

**FOR PUBLICATION**

**Workers' Compensation Provision**

Plaintiffs contend that the proposed workers' compensation provision violates 49 C.F.R. § 376.12(i). This section states that "the lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." Section 17 of the proposed lease states exactly what is required by the statute. (Pl. Ex. K, Proposed Lease, at 8).

Plaintiffs contend that, contrary to section 376.12(i), the lease contains the forced purchase of workers' compensation insurance. The proposed lease provides contractors two options concerning workers' compensation insurance; they may purchase workers' compensation insurance from All Saints at 3% of the contractor's gross weekly billing, or they may purchase workers' compensation from a third party and provide All Saints with proof that the premium for one year has been paid. Because the lease explicitly provides the contractor with the ability to purchase workers' compensation insurance from a third party, the lease does not require the purchase of any product from All Saints. There is no violation of § 376.12(i).

**Charge-Back Provision**

49 C.F.R. § 376.12(h) states:

> The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

Section 8(B) of the proposed lease:

> Contractor agrees that all expenses associated with the operation of its Equipment while under lease to ASE, such as, for example, repairs, maintenance, tires, fees, penalties, insurance, fuel, oil, tolls, permits, applicable taxes, etc. ["expenses"], shall be the sole obligation of the Contractor. … In the event ASE is requested by

---

during use as a normal automobile for personal purposes." Mahaffey v. First Coast Intermodal Serv., Inc., 51 F. App'x 483, at *1 (5th Cir. Oct. 2, 2002).

> Contractor to advance moneys for expenses on behalf of Contractor, and ASE agrees to do so, Contractor authorizes ASE to withhold from any moneys due Contractor the amounts advanced by ASE for the benefit for Contractor.

*Listing of Items*

Plaintiffs argue that the inclusion of "etc" in the definition of the expenses that constitute charge-backs necessarily means that the lease fails to "clearly specify <u>all</u> items" that may be charged back to the contractors. All Saints claims that the provision does identify all charge-backs. The provision should define expenses as "repairs, maintenance, tires, fees, penalties, insurance, fuel, oil, tolls, permits, applicable taxes <u>and like items</u>." Such a definition more adequately provides contractors with knowledge of the items that will be subject to charge-back and would comply with the Regulations.

*Charge-Back Calculation*

Plaintiffs further argue that the provision violates § 376.12(h) because it fails to explain how the amount charged for each charge-back is to be calculated. Defendant claims that the provision does specify how the amount of the charge-backs will be computed because "it provides that before any money can be charged to what is owed the Contractor[,] a copy of the invoice paid by ASE is to be provided to the Contractor." (Df. Br., at 6.) This argument does not address plaintiffs' concern; an invoice does not necessarily explain how a charge is computed.

Section 8(B), however, notes that the money deducted from the contractor's pay will be equal to the amount advanced by All Saints. ("Contractor authorizes ASE to withhold from any moneys due Contractor the amounts advanced by ASE for the benefit of Contractor." (Pl. Ex. K, Proposed Lease, at 4.) This adequately explains how the charge-back is calculated; whatever All Saints advances to the contractor is later deducted from his pay. Plaintiffs complain that the

**FOR PUBLICATION**

amount paid by All Saints and later charged to the contractor could include some sort of mark-up or administrative fee. Because All Saints asserts that no such fee will be imposed and that the lease means what it says, that All Saints will deduct only that which it has advanced, there is no violation of § 376.12(h).

### *Validity of Charge Documents*

Last, plaintiffs argue that the lease violates § 376.12(h) because it fails to state that the contractors "shall be afforded copies of those documents which are necessary to determine the validity of the charge." (Pl. Br., at 7.) Section 376.12(h) does not require that the lease state that these documents will be provided to the lessors; it only requires that the lessors receive such documents. At any rate, the proposed lease states that "all such deductions shall be based on invoices provided by ASE to Contractor prior to the withholding of any moneys due Contractor." (Pl. Ex. K, Proposed Lease, at 4.) Plaintiffs do not claim that the invoices on which the charge-backs are based will not provide them with sufficient information to determine the validity of the charge-backs, nor do they request additional information. Instead, they demand that the lease state "that the Contractor shall be afforded copies of those documents which are necessary to determine the validity of the charge." (Pl. Rep. Br., at 7.) The regulations do not require this.

**Compensation Provision**

Plaintiffs assert that the compensation clause in the proposed lease violates 49 C.F.R. § 376.12(d), which states:

> The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier.

The proposed lease establishes that compensation will be paid according to Schedule C. Schedule C lists local delivery destinations and/or pick up locations with round trip fixed fees for

**FOR PUBLICATION**

pick up/delivery at over 400 locations in compliance with the Regulations. For the few trips that are geographically outside the listed locations Schedule C states:

> Additional delivery or pick up points, not listed below, may, at times, be offered to the drivers for acceptance. In such event, the compensation shall be communicated by ASE to Contractor at the time the move is offered – orally (including by phone), electronically, or in hard copy form. If Contractor decides to accept the move at the rate offered, Contractor shall evidence his/her agreement to do so either by thereupon performing the move and signing the delivery receipt, which shall state the rate for the move and be signed by an ASE representative also, or by communicating via an electronic device. The completed signed delivery receipt shall constitute an addendum to this contract.

Plaintiffs contend that because addendum is defined as "a supplement to an existing lease which is not effective until signed by the lessor and lessee," 49 C.F.R. § 376.2(i), any consent that may be obtained either by an electronic device or by phone would violate the regulations.

All Saints claims that the complained of provision represents job opportunities that cannot be anticipated by the lease. All Saints gives, as example, a hypothetical situation contemplated by the challenged provision: a new St. George customer decides to have goods for export warehoused at St. George. All Saints needs to pick up the cargo in Brooklyn, NY. The contractor is already in Brooklyn delivering other cargo. Since this is a new customer, neither the destination point, nor the fee All Saints will pay are covered by Schedule C. All Saints claims that the provision is question contemplates valid addendums to the lease to deal with such a situation. Furthermore, this scenario would make up a small fraction of the contractor's trips.

In the hypothetical situation contemplated by All Saints, the contractor has the ability to take on the additional job, or refuse such work at will. If he chooses to accept the job he is provided with a clear statement of how much he will make during the trip, and the delivery receipt will contain the signature of both an All Saints representative and the contractor. This scheme provides the contractor with all the information that is required by the Regulations and

8

**FOR PUBLICATION**

All Saints will not be held in contempt for such a provision.

**Arbitration Provision**

The proposed lease calls for mandatory arbitration if a contractor "objects to any proposed deduction from his compensation." (Pl. Ex. K, Proposed Lease, at 4.) Mandatory arbitration is also proposed for any dispute between the parties as to who should pay a fine. (Pl. Ex. K, Proposed Lease, at 8.) Plaintiffs assert that the arbitration provisions violate both the Regulations and the Court's injunction.

### *Violation of the Regulations*

All Saints maintains that the Regulations do not prohibit arbitration of contractual disputes. Case law supports All Saints' contention. See Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC, No. 06-219, 2006 WL 5003366 (E.D. Mo. Nov. 15, 2006) (finding that dispute between owner-operators and a motor carrier concerning both contractual rights and potential violations of the Regulations was subject to arbitration given a valid arbitration clause). An arbitration clause in a lease is not contrary to the Regulations.

### *Divesting this Court of Jurisdiction*

Plaintiffs' argument concerning the propriety of the arbitration clause concerning charge-backs centers on their claim that the charge-back provision as currently drafted is non-compliant with the Regulations. Plaintiffs argue that All Saints "may not use a binding arbitration provision to compensate for its lease's complete failure to comply with the chargeback regulation." (Pl. Br. at 9.) Plaintiffs further claim that if they dispute a charge-back as unlawful under the Regulations, the Court's injunction provides them with the right to seek redress in this Court.

All Saints counters that the arbitration clauses relate only to contractual disputes and not

**FOR PUBLICATION**

questions of whether any provision of the lease violates the Regulations. Because the charge-back arbitration clause addresses disagreements over a particular charge-back and has nothing to do with identifying items subject to charge-back in the lease, or allegations that a charge-back provision violates the Regulations, All Saints contends that the clause does not violate the Regulations or this Court's order.

The charge-back arbitration clause governs only objections to "any proposed deduction from [the contractor's] compensation." (Pl. Ex. K, Proposed Lease, at 4.) Plaintiffs claim that this language is broad enough to cover legal challenges under the Regulations in addition to contract disputes over a particular charge-back. This is not a fair reading of lease. The lease deals with an actual deduction from the contractor's pay, not whether the lease adequately lists the categories of items that may be subject to charge-back. Because this arbitration provision deals exclusively with contractual disputes, it does not divest this Court of the ability to deal with potential violations of the Regulations or prevent plaintiffs from seeking to enforce the October 18, 2010 injunction in court.

### *Arbitration Costs*

The proposed lease also requires the parties to equally split the cost of arbitration and requires that the contractor post one-half of the arbitrator's fee in escrow when he requests arbitration. Plaintiffs contend that this payment splitting "is clearly designed to deprive owner-operators of their rights under federal law." (Pl. Br., at 9.) They also argue that because the arbitrator's daily fee is $1,000, enforcing the arbitration clauses would be unconscionable because the disputed fine or charge-back could be substantially less than half of this arbitration fee. Such a fee would also be especially onerous because plaintiffs assert that each contractor makes approximately $25,000 per year.

**FOR PUBLICATION**

Plaintiffs rely on Delta Funding Corp. v. Harris, for the proposition that "[t]he prospect of having to shoulder all the costs of arbitration could chill [plaintiffs] and similarly situated [contractors] from pursuing their statutory claims through mandatory arbitration." 912 A.2d 104, 112 (N.J. 2006). Plaintiffs also rely on Morrison v. Circuit City Stores, Inc., to argue that cost-splitting provisions in arbitration agreements are similarly invalid. 317 F.3d 646 (6th Cir. 2003). All Saints argues that requiring the contractor to post half of the arbitrator's fee is in no way illegal, and that plaintiffs have not provided any authority holding that it is.

While both Delta and Morrison deal with payment splitting in the arbitration of statutory rights and, as discussed, the arbitration clause at issue here deals solely with potential contractual disputes, at least one district court has applied the same framework to questions of whether a payment splitting plan was unconscionable in a contract dispute. Lucey v. FedEx Ground Package Sys., Inc., No. 06-3738, 2007 WL 3052997, at *9-10 (D.N.J. Oct. 18, 2007).

While plaintiffs contend that the disputed amount may be less than half of the arbitrator's fee, they have not alleged an inability to pay $500. Cf. Alexander v. Anthony Intern., L.P., 341 F.3d 256, 269 (3d Cir. 2003) (finding that an arbitration clause was unconscionable because plaintiffs had established that "they clearly could not meet this financial burden"). Here, plaintiffs have not established that the arbitration clause is unconscionable. See Blair, 283 F.3d at 608 (finding that plaintiff had not established that a arbitration clause requiring fee-splitting was unconscionable because she did not prove her inability to pay where she submitted only an affidavit, without any supporting financial statements). However, as plaintiffs make only $25,000 per year, according to counsel's representations at oral argument, posting $500 per day of arbitration may be prohibitively expensive even when the contested fee is more than $500. Given this, the Court reserves decision of this issue and requests briefing from both parties on

plaintiffs' ability to pay. The burden to establish unconscionability, however, remains with the plaintiffs.

### *Exempted from Arbitration*

In their reply, plaintiffs claim for the first time that the arbitration provision is invalid under the Federal Arbitration Act ("FAA") because "contracts of employment of seamen, railroad employees, or any other class of workers engaged in interstate commerce" are exempted from mandatory arbitration. 9 U.S.C. § 1. Plaintiffs, who do not dispute that the lease expressly notes that "Contractor is at all times deemed to be an independent contractor and neither Contractor nor its employees are to be considered to be employees of ASE," contend that they are nevertheless exempt from arbitration. (Pl. Ex. K, Proposed Lease, at 8.)

In support of their claim that they are exempt from mandatory arbitration, plaintiffs cite a District of Utah case which held that the independent contractor agreements were contracts of employment and exempt from compulsory arbitration. See Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., 325 F. Supp. 2d 1252, 1258 (D. Utah 2004). In C.R. England, the court held, without discussion, that a contract's description of the owner-operator as an independent contractor was not dispositive on § 1's applicability. Id. at 1258. The court then found that the agreements were contracts of employment because they "cover[ed] the owner-operator's agreement to perform personally, or through other drivers, certain functions related to the operation of the equipment for C.R. England's business." Id.[3]

Plaintiffs do not, however, address the contrary authority concerning 9 U.S.C. § 1's

---

[3] The other district courts that have followed the position urged by plaintiffs follow an Eleventh Circuit finding that 49 U.S.C. § 14102 created a statutory employer-employee relationship between truck drivers and motor carriers. See Gagnon v. Serv. Trucking, 266 F. Supp. 2d 1361 (M.D. Fla. 2003) and Owner-Operator Indep. Ass'n v. Landstar Sys., Inc., No. 02-1005, 2003 WL 23941713 (M.D. Fla. Sept. 30, 2003). 49 C.F.R. § 376.12(c)(4), however, states that "Nothing in the provisions … of this section is intended to affect whether the lessor … is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements." Because the Court does not find a statutorily proscribed employer-employee relationship, the Court declines to rely on these cases.

**FOR PUBLICATION**

applicability to owner-operators. While neither the Supreme Court nor the Third Circuit has determined whether an owner-operator who is an independent contractor is covered by this exemption, other district courts have found that that unless the party can affirmatively establish that the FAA does not apply, the court should apply the characterization of the employment relationship described in the contract. Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC, No. 06-219, 2006 WL 5003366 (E.D. Mo. Nov. 15, 2006); Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., 288 F. Supp. 2d 1033 (D. Ariz. 2003); Letourneau v. Fedex Ground Package Sys., Inc., No. 03-530-B, 2004 WL 758231 (D.N.H. Apr. 17, 2004); see also Roadway Package Sys., Inc. v. Kayser, No. 99-MC-111, 1999 WL 817724, at *4 n.4 (E.D. Pa. Oct. 13, 1999) (finding, without discussion, that because respondent was an independent contractor, he was not exempted from arbitration.) As such, owner-operators characterized as independent contractors, who cannot establish that they have contracts of employment may be subject to arbitration.

C.R. England provides no substantive analysis or guidance concerning its decision. The test used in United Van Lines and Swift, however, "not only further[s] the complementary policies favoring arbitration and narrowly construing the FAA's exceptions, but also provides a sound methodology." United Van Lines, 2006 WL 5003366, at *3. Because it better effectuates the FAA's goals, this Court chooses to follow United Van Lines. Given this record, the plaintiffs have failed to establish that they are employees, not independent contractors, and exempt from arbitration.

## SUBSTANTIAL PERFORMANCE

All Saints claims that it has worked with plaintiffs to draft compliant leases and that it has taken all reasonable steps to comply with the issued injunction. All Saints submitted a proposed

**FOR PUBLICATION**

draft lease to plaintiffs on November 8, 2010, and invited comments and suggested language from plaintiffs and their counsel. After receiving comments, All Saints submitted a second draft lease on December 1, 2010. On December 13, 2010, plaintiffs again challenged certain portions of the proposed lease. All Saints wrote to plaintiffs on December 20, 2010. They noted that aside from a few changes, they now deemed the lease to be compliant with the Regulations.

All Saints claims that they have taken all reasonable steps to comply with the injunction. All Saints must "introduce evidence beyond a mere assertion of inability" to comply with the order. Harris v. City of Phila., 47 F.3d 1311, 1324 (3d Cir. 1995) (citation omitted). Indeed, for the substantial compliance defense to be available, All Saints must "show that it (1) has taken all reasonable steps to comply with the valid court order, and (2) has violated the order in a manner that is merely 'technical' or 'inadvertent.'" F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 591 (3d Cir. 2010). All Saints communicated with plaintiffs concerning the drafting of compliant leases and the only two violations that All Saints has made may both be characterized as "technical" and both may be repaired with minor language changes. All Saints will not be held in contempt.

## ST. GEORGE'S ACTIONS

In plaintiffs' reply brief they allege additional facts that they believe bear on their request for contempt citations. Plaintiffs claim that St. George has "decided to enter into brokerage agreements with a number of companies, including ASE, to pick up and transport [St. George's] freight. There are at present … five companies St. George has entered into contracts with along with ASE." (Pl. Rep. Ex. B., Jan. 19, 2011 John Craner Letter.) Under this new arrangement, only two current owner-operators will remain leased to All Saints. St. George has suggested that the other five carriers hire the "experienced owner-operators presently under contract with ASE."

14

**FOR PUBLICATION**

(Pl. Rep. Ex. B., Jan. 19, 2011 John Craner Letter.)  A St. George employee met with plaintiff Juan Marte and Marte signed a new lease agreement with motor carrier Storewide Delivery Company, Inc.  Plaintiffs allege that this lease is not compliant with the Regulations.

Plaintiffs argue that St. George's actions are in violation of the permanent injunction because they have transferred All Saints' work and All Saints' owner-operators to other motor carriers with non-compliant leases.  While they do not allege that All Saints or St. George had anything to do with the allegedly non-compliant lease's drafting, plaintiffs contend that St. George's actions are aiding and abetting All Saints' violations.  The lease that plaintiffs point to, however, is one entered into between plaintiff Juan Marte and Storewide Delivery – not All Saints.  If Marte has entered into a non-compliant lease with Storewide Delivery, this would not violate the Court's October, 18, 2010, order.  Furthermore, because All Saints has substantially complied with the injunction, there is no violation to aid or abet.

## CONCLUSION

With the above outlined changes, the proposed lease complies with the Regulations.

For the foregoing reasons, it is on this 28th day of January, 2011,

ORDERED that All Saints must enter into leases with the above changes by February 4, 2011,

ORDERED that Plaintiffs submit briefing and financial documentation concerning their ability to pay under the proposed arbitration clause by February 11, 2011.  All Saints' response will be due on February 18, 2011.

**s/ William H. Walls**
United States Senior District Judge
