**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PORT DRIVERS FEDERATION 18, INC., FLORENCIO HERNANDEZ, JULIAN HERNANDEZ, JOSE LANDA, NELSON RODRIGUEZ, and JUAN MARTE, | : : : : : |
| | : **AMENDED OPINION and ORDER** |
| Plaintiffs, | : Civ. No. 09-868 (WHW) : : |
| v. | : : |
| ALL SAINTS and ST. GEORGE WAREHOUSE, INC., | : : |
| Defendants. | |

**Walls, Senior District Judge**

Port Drivers Federation 18, Inc., Florencio Hernandez, Julian Hernandez, Jose Landa, Nelson Rodriguez, and Juan Marte claim that they are entitled to attorneys' fees and costs from defendants.   Pursuant to Rule 78.1 of the Local Rules, the motions are decided without oral argument.   The motion is granted with the requested amount reduced.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are independent owners and operators of trucks who lease their trucking equipment and driving services to defendant All Saints.  Plaintiffs filed a complaint alleging that the leases that they entered into with All Saints were in violation of the federal Truth in Leasing Regulations.  Both plaintiffs and defendants moved for summary judgment.  On October 18, 2010, the Court granted summary judgment in favor of the plaintiffs', finding that the leases violated: (1) the compensation provision of 49 C.F.R. § 376.12(d), (2) the compensation

1

**NOT FOR PUBLICATION**

documentation provision of 49 C.F.R. § 376.12(g), (3) the signed lease of a specific duration provision of 49 C.F.R. §§ 376.11(a)-(b) and 376.12(b), (4) the workers' compensation insurance documentation provision of 49 C.F.R. § 376.12(j)(2), and (5) the chargeback provision of 49 C.F.R. § 376.12(h).   The Court also permanently enjoined All Saints "from violating the conditions and requirements of the Regulations." Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc., No. 09-868, 2010 WL 4116500, at *18 (D.N.J. Oct. 18, 2010).  St. George was not found liable.

Plaintiffs later requested that the Court hold All Saints in contempt contending that, despite the October 18, 2010 order, All Saints had failed to comply with the Regulations.  The Court held a hearing on January 25, 2011.  The Court suggested only a few minor changes to the leases and declined to hold All Saints in contempt.

Plaintiffs' counsel now moves for attorneys' fees and costs.  Plaintiffs' counsel claims to have spent more than 1,700 hours on this matter and requests fees in excess of $760,000.

## STANDARD OF REVIEW

"Under the 'American Rule,' parties to litigation are to pay their own attorneys' fees, absent statutory authority and a court order providing otherwise." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 231 (3d Cir. 2008).  Concerning Federal Truth in Leasing Regulation cases, "The district court shall award a reasonable attorney's fee under this section" to the prevailing party.  49 U.S.C. § 14704(e).  Litigants are considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit," and they cause a "court-ordered change in the legal relationship" between the parties. People Against Police Violence, 520 F.3d at 232 (quotations and citations omitted).

NOT FOR PUBLICATION

A Court determines whether the prevailing party's request for attorneys' fees is reasonable by calculating the lodestar. This is determined by multiplying the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Hours that are "excessive, redundant, or otherwise unnecessary" are not reasonably expended on the litigation and must be excluded from the lodestar calculation. Pennsylvania Envtl. Def. Fund v. Canon-McMillan Sch. Dist., 152 F.3d 228, 231 (3d Cir. 1998). The Court must also "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." McKenna, 582 F.3d at 455 (citing Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001)).

## DISCUSSION

A. Prevailing Party

The Third Circuit applies a two part test to determine prevailing party status. The Court must determine whether: "(1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant." P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 259 (D.N.J. 2000) (citation omitted).

The first prong of the test is examined by comparing the relief sought to the relief obtained. Id. "[P]laintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." Inst. Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897, 911 (3d Cir. 1985). Here, plaintiffs sought injunctive and declaratory relief. The Court issued a declaratory judgment and

**NOT FOR PUBLICATION**

an injunction similar in terms to the requested injunction concerning defendant All Saints'

violation of the Truth in Leasing Regulations.  The Court, however, did not find St. George

liable, find any support for plaintiffs' retaliation claims and denied the plaintiffs' request that

defendants be held in contempt.  Given that the majority of plaintiffs' claims centered on a

determination that All Saints had entered into noncompliant leases, plaintiffs have obtained relief

on a significant claim.

      The Court also finds a causal connection between the defendants drafting and utilizing

leases that comply with the Truth in Leasing Regulations and the Court's October 18, 2010,

order.  The litigation was a "material contributing factor in bringing about the events that

resulted in the obtaining of the desired relief" because defendants did not voluntarily alter their

leases.  Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, 964 F.2d 244, 250 (3d Cir.

1992) (citation omitted).

      Plaintiffs have satisfied the two prongs of the prevailing party test, and the Court now

considers whether their requested attorneys' fees and costs are reasonable.

    B.  Hourly Rate

      Plaintiffs claim that the hourly rates they have used to calculate their requested attorneys'

fees are reasonable.  Plaintiffs have been represented by William McGuire and Grant McGuire of

the law firm Tompkins, McGuire, Wachenfeld & Barry LLP.  Grant McGuire's hourly billing

rate is $400 and William McGuire's billing rate is $595.  Plaintiffs have also been represented by

a number of lawyers at The Cullen Law Firm.  The billing rates of these attorneys range from

$410 to $475 per hour.  The billing rate of Karina Arias, a paralegal at The Cullen Law Firm, is

$130 per hour.[1]

---

[1] While the defense claims that paralegal fees are non-compensable because "the salary expense for paraprofessional and accountant is overhead; it is not an expense for which an independent fee allowance is made," (Def. Br. at 5,)

**NOT FOR PUBLICATION**

The prevailing party bears the burden of documenting the applicable hourly rate. In re Tutu Wells Contamination Litig., 120 F.3d 368, 391 (3d Cir. 1997). To do this, he must establish "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." Evans v. Port Auth. of New York and New Jersey, 273 F.3d 346, 360-61 (3d Cir. 2001). This burden is traditionally satisfied by the submission of "the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 261 (D.N.J. 2000) (citation omitted).

In this case, plaintiffs have not submitted any affidavits of attorneys in the relevant legal community. Instead, concerning the lawyers of The Cullen Law Firm, plaintiffs rely on the Laffey Matrix as the basis for the reasonableness of their charged rate. The Laffey Matrix is published by the Civil Division of the United States Attorneys' Office for the District of Columbia. It is used in cases in the District of Columbia where statutes foresee fee-shifting of attorneys' fees. The rates charged by The Cullen Law Firm mirror the suggested fees listed in the Laffey Matrix. The Third Circuit, however, has cautioned against accepting the Laffey Matrix because it has found that "any index that is updated based on a statistical measure of inflation - rather than regular recalibration in light of prevailing rates - will tend to diminish in accuracy over time. For this reason, district courts in this Circuit should be assiduous in

---

"[b]ecause paralegals charge hourly rates and assist the lawyers with their legal work, their fees are properly considered part of 'legal fees.'" Microsoft Corp. v. United Computer Res. of New Jersey, Inc., 216 F. Supp. 2d 383, 388 n.2 (D.N.J. 2002).

2 In their reply papers The Cullen Law Firm claims that they are not seeking "hourly rates based on the prevailing rates in Washington, D.C." (Pl. Rep. Br. at 7.) If this is true, and The Cullen Law Firm seeks fees that are reasonable under New Jersey standards, the Court can conceive of no reason why they submitted the Laffey Matrix (which plaintiffs offer "as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area."

**NOT FOR PUBLICATION**

evaluating fee requests in light of *all* the evidence." Interfaith Comm. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 710 n.14 (3d Cir. 2005) (emphasis in the original).[2]

The plaintiffs have not established why the prevailing rate charged in Washington, D.C. should be used as opposed to the prevailing hourly rate of New Jersey. "Under normal circumstances, a prevailing party's attorneys should be compensated based on market rates in the vicinage of the litigation." Id. at 699. In this case, that would be New Jersey and not Washington, D.C. While the Third Circuit has accepted the prevailing market rate of another jurisdiction as the appropriate rate for reimbursement, it has only done so where "the prevailing party showed that [the case] required the particular expertise of counsel from another vicinage, or that local counsel were unwilling to take on the litigation." Id.

Plaintiffs have not presented any evidence showing that they conducted a significant search for lead counsel able to handle this case in New Jersey. They do not speak to this issue at all in their moving papers and merely reference the declaration of Melanio Pimentel, the director of Port Drivers Federation 18, in their reply brief. Pimentel stated that "[t]here are very few lawyers with experience in motor carrier law. Those that do have experience almost always represent motor carriers who can afford to pay their fees." (Pl. Ex. A to Order to Show Cause, Pimentel Dec. ¶5.) This is nothing more than a generalized statement that lawyers prefer certainty in billing. This in no way shows that plaintiffs conducted any search for counsel in New Jersey – let alone a meaningful one, or that they were unable to find competent counsel in

---

[2] In their reply papers The Cullen Law Firm claims that they are not seeking "hourly rates based on the prevailing rates in Washington, D.C." (Pl. Rep. Br. at 7.) If this is true, and The Cullen Law Firm seeks fees that are reasonable under New Jersey standards, the Court can conceive of no reason why they submitted the Laffey Matrix (which plaintiffs offer "as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area." (Apr. 21, 2011, Decl. Paul D. Cullen, Sr., ¶ 8), or why they claimed that their requested fees were reasonable "by Washington standards." (Pl. Br. at 12.) Regardless, the plaintiffs have not established why the prevailing rate charged in Washington, D.C. would be used as opposed to the prevailing hourly rate of New Jersey.

**NOT FOR PUBLICATION**

this vicinage.  It is very possible that there are attorneys with experience in this field in New

Jersey, or competent local counsel who would have agreed to represent the plaintiffs and who

could quickly be brought up to speed.  Competent New Jersey counsel were in fact engaged, but

used sparingly, primarily to expedite *pro hac vice* admissions of The Cullen Law Firm members.

The statements put forward do not prove otherwise and do not establish that local counsel were

unwilling to take on this litigation.  Similarly, plaintiffs do not claim that this case "required the

particular expertise of counsel from another vicinage."  Interfaith Comm. Org., 426 F.3d at 699.

This case involved the application of a straightforward federal law, not interpretation of laws of

another locality where outside counsel might be necessary.  Because plaintiffs have not satisfied

either exception, the proper community rate is that of New Jersey.  See Nat. Elec. Ben. Fund v.

Starko Elec. Servs., Inc., No. 06-1446, 2010 WL 1049980, at *3 n.4 (D.N.J. Mar. 16, 2010).

As for Grant and William McGuire, the plaintiffs say nothing more to justify the listed

rates than "the attorney's customary billing rate is the proper starting point for calculating fees."

(Pl. Br. at 11.)  In his declaration, Grant McGuire did not provide any information concerning the

usual and customary hourly rates for New Jersey, nor did he supply affidavits from other

practitioners in northern New Jersey attesting to their usual and customary rates.  That these

lawyers charge a certain amount in no way establishes "the community billing rate charged by

attorneys of equivalent skill and experience performing work of similar complexity."  Evans v.

Port Auth. of New York and New Jersey, 273 F.3d 346, 360-61 (3d Cir. 2001).

After failing to properly present evidence of appropriate billing rates in their opening

papers, plaintiffs have submitted a survey of attorney billing produced by The National Law

Journal.  Plaintiffs compare their requested hourly rates to the median billing rates of two of New

**NOT FOR PUBLICATION**

Jersey's largest and most respected firms in an effort to show their reasonableness.[3]  On August 9, 2011, the Court conducted a hearing to allow plaintiffs to present evidence to meet their burden of documenting the applicable hourly rate.  In re Tutu Wells Contamination Litig., 120 F.3d 368, 391 (3d Cir. 1997).  Plaintiffs did not present any new evidence, but claimed that this case presented novel issues because the defendants put forth a jurisdictional defense and plaintiffs sought injunctive relief.  There is nothing novel about an injunction, and while plaintiffs noted that they had never dealt with a jurisdictional defense to a federal Truth in Leasing case, they did not explain how such a defense was particularly arduous.

Plaintiffs also reiterated the arguments put forth in their papers and their comparison to Gibbons P.C. and McCarter & English LLP.  This comparison is not availing.  Gibbons and McCarter & English, two of New Jersey's most prestigious firms, are routinely called upon to work on complex and novel legal issues and their billing rates reflect this.  Plaintiffs have failed to establish that in this case they were "performing work of similar complexity," as attorneys of Gibbons and McCarter & English.  Evans, 273 F.3d at 360-61.  Certainly, requesting nearly $200 an hour *more* than an average Gibbons or McCarter & English attorney to act as local counsel for a routine case with no novel legal issues is unreasonable.

An examination of hourly rates permitted in fee shifting cases in New Jersey shows a good deal of variation from experienced attorneys.  The reasonable fees, however, are practically uniformly less than those requested by plaintiffs' counsel.  See Alliance for Disabled in Action, Inc. v. Renaissance Enter., Inc., 2010 WL 2990846, at *12 (N.J. Super. App. Div. July 30, 2010) (finding $350 was a reasonable fee for an attorney with 34 years of experience); In re Costino, 2010 WL 4007949, at *12 (N.J. Super. App. Div. Oct. 12, 2010) (concluding that $175 was a

---

[3] It is notable that plaintiffs fail to reference the average billing rate of the only other law firm in this vicinage with average attorney billing rates available, McElroy, Deutsch, Mulvaney & Carpenter LLP, which bills, on average, $210 per hour.

**NOT FOR PUBLICATION**

reasonable hourly rate for a deputy attorney general with more than 10 years experience); Crespo v. City of Newark, 2010 WL 4117022, at *5 (N.J. Super. App. Div. May 4, 2010) (stating that the hourly rate charged by attorneys in the northeastern counties of New Jersey ranges from $250 to $400 per hour); Ridley v. Costco Wholesale Corp., 217 F. App'x 130, 139 (3d Cir. 2007) (holding that $375 was "a fair and reasonable rate for someone of [the attorney's] experience because he was "undeniably an experienced litigator."). Indeed, the Third Circuit found that an hourly rate of $550 would put an attorney "among the few top-earning partners in New Jersey." Tenafly Eruv Ass'n Inc. v. Borough of Tenafly, 195 F. App'x 93, 98 (3d Cir. 2006). Plaintiffs have not met their "burden of establishing . . . [the reasonableness of their requested] hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). While many of plaintiffs' counsel are experienced, this case was not of sufficient complexity or novelty to warrant the requested fees. Considering fees granted in other cases, the average billing at Gibbons, McCarter & English, and McElroy, and the skill required to litigate this case, the Court finds that a rate of $475 is a reasonable hourly rate for William McGuire, a rate of $350 is reasonable for Paul Cullen, Sr., David A. Cohen, Daniel E. Cohen, Randall Herrick-Stare and Joyce Meyers, and a rate of $325 is reasonable for Grant McGuire and Paul Cullen, Jr.

  C. Hours Expended

   The prevailing party is not necessarily entitled to recover for all of the time it has spent on a case. Instead, the Third Circuit "requires an attorney to justify the expenditure of time in an efficient manner consistent with the experience that was reflected in the hourly rate." Glass v. Snellbaker, No. 05-1971, 2008 WL 4416450, at *6 (D.N.J. Sept. 23, 2008). As such, the attorney for the prevailing party should make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

**NOT FOR PUBLICATION**

*ethically is obligated* to exclude such hours from his fee submission." City of Riverside v. Rivera, 477 U.S. 561, 579 (1986) (emphasis added) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

      a.   The Cullen Law Firm

Plaintiffs claim that recovering their requested $765,846.79 award is appropriate, in part, because "several similar cases [pursued by The Cullen Law Firm] have ended with plaintiffs' claims dismissed." (Pl. Rep. Br. at 2.) That plaintiffs' attorneys were unsuccessful on other matters has no bearing on whether the amount of time they spent on this matter was reasonable. And indeed, it was not.

Defense counsel does little to address plaintiffs' allegedly unreasonable expenditures of time, instead stating only that "it is impractical to address and criticize Plaintiffs' counsel's billing," (Def. Br. at 10,) and opting instead to give a few examples of alleged overbilling. Despite the defense's lack of vigor and rigor in examining plaintiffs' submission, there are multiple instances of billing which are patently unreasonable. Plaintiffs' counsel claims to have spent over 1700 hours in their representation in this matter. This is nearly an entire *year* of legal billing for a case involving only straightforward legal issues. Their submission is particularly unreasonable because this case involved legal issues that plaintiffs have previously addressed in numerous similar proceedings in other courts. See Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC, No. 06-219 (E.D. Mo.); Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., No. 05-1423 (D. Ariz.); Owner-Operator Indep. Ass'n v. Landstar Sys., Inc., No. 02-1005 (M.D. Fla.); Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., No. 02-950 (D. Utah); Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp., No. 00-258 (W.D. Mo.); Owner-Operator Indep. Drivers Ass'n, Inc v. Mayflower Transit, Inc., No. 98-457

**NOT FOR PUBLICATION**

(S.D. Ind.). The Managing Partner of The Cullen Law Firm even touts his firm's experience in this area of law, noting in his declaration that his "firm has represented independent truck owner-operators for the last fifteen years in many cases seeking vindication of owner-operators' rights under the federal Truth-in-Leasing regulations." (Apr. 21, 2011, Decl. Paul D. Cullen, Sr., ¶ 16). The firm's level of experience in this area underscores the absurdity of the requested fees.

       i. <u>Time Spent on Papers</u>

First, attorneys from The Cullen Law Firm claim to have spent over 60 hours drafting and revising a simple 13-page complaint made up of only 59 paragraphs ranging in length from one to five sentences. This means that it took counsel *over an hour* to draft and revise each few sentences, many of which are boiler plate about the federal Truth in Leasing Regulations, the basis for jurisdiction and venue, and the names and addresses of the parties. This is utterly ridiculous given counsel's familiarity with cases of this nature. The Court finds that the over 60 hours plaintiffs' counsel spent drafting the very basic complaint in this action defies belief. Because "our cases supply no authority for rewarding non-stop meter running in law offices," <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 677 (3d Cir. 1983), the Court shall reduce those hours to a reasonable time of 10 hours.

The Cullen Law Firm next claims to have spent over 200 hours "research[ing] and draft[ing] memorandum to show cause why preliminary injunction should not be granted," and working on the accompanying declarations. (The Cullen Law Firm's Ex. B, p. 2, line 4.) The brief in support of this motion was 26 pages, and the four declarations total a mere 11 pages. In light of these numbers, plaintiffs claim that each page required nearly eight hours of legal work. "It is clear that we may consider the nature and complexity of the legal issues in determining the reasonableness of the fee request." <u>Garden State Auto Park Pontiac GMC Truck, Inc. v. Elec.</u>

**NOT FOR PUBLICATION**

<u>Data Sys. Corp.</u>, 31 F. Supp. 2d 378, 385 (D.N.J. 1998) (citation omitted).  Here, all that counsel did was address existing Truth in Leasing Regulation case law, and argue that a preliminary injunction was warranted; this brief did not involve new or unusual applications of law.  While these numbers include some research, they do not reflect reality.  The Court reduces these hours to a more reasonable time of 50 hours.

Plaintiffs also claim to have spent more than 100 hours working on the reply to their motion for a preliminary injunction and their opposition to defendants' motion to dismiss.[4] Their submission consists of a straightforward 16-page brief, two certifications, and a number of exhibits, all of which are screenshots from websites.  An experienced attorney, which plaintiffs' counsel undoubtedly are in this area, should spend no more than a few hours of research and writing per page in a case such as this.  Furthermore, this brief includes large quotations from other sources including both parties' statements of fact, the Truth in Leasing Regulations, St. George's website, and case law.  These large blocks of quotations account for nearly *one-third* of the brief.  Experienced counsel, working diligently, could have produced this brief in 25 hours, and the requested hours will be reduced.

Despite the relative simplicity of the legal issues involved, plaintiffs next claim to have spent over 150 hours working on their motion for summary judgment.  This motion totaled 28 pages.  The alleged hour total for this brief is especially astounding because plaintiffs appear to have cut and pasted significant portions of their brief requesting a preliminary injunction into this brief.[5]  Excluding these nearly *13 pages* of apparently copied text, the brief consisted of only 15

---

[4] Because many of The Cullen Law Firm's time entries list blocks of time that include work on both of these matters and fail to address how much time was spent on each individual task, and because plaintiffs consolidated their response to the Court on these tasks, they are examined together.  (*See e.g.*, The Cullen Law Firm's Ex. B, p. 8, line 6, "Draft and revise opposition to 12(b)(6) and reply to order to show cause.")

[5] "The Leasing Regulations were promulgated as the result of over two decades of legislative and regulatory efforts to curb abuses and inequitable treatment of owner-operators by carriers."  (Preliminary Injunction Br. at 3.

**NOT FOR PUBLICATION**

pages of new work product.  This Court finds it utterly shocking that it would take counsel well

versed in the Truth in Leasing Regulations over 150 hours to produce what amounts to a 15 page

summary judgment brief.  This is especially true given that significant portions of this brief are

taken up by footnotes, (see, e.g., Pl. Summary Judgment Br. at 8,) and block quotations, (see,

e.g., Pl. Summary Judgment Br. at 9.)  The hours submitted for this motion are "staggering, and

well beyond the pale" and are reduced to 30 hours.  Interfaith Comm. Org. v. Honeywell Intern.,

Inc., 426 F.3d 694, 712 (3d Cir. 2005).

        The next documents plaintiffs drafted are their reply to defendants' opposition to their

motion for summary judgment, and their opposition to defendants' summary judgment motion.

Their reply brief is just over 11 pages, yet they claim to have spent nearly 80 hours drafting and

revising it.  This is especially surprising because reply briefs may not address new issues, and

much of this reply is a recitation of the arguments put forth in their moving papers.  Their

opposition brief, which is just over 24 pages and includes 3 pages of block quotes, took them

nearly 55 hours to complete.  Both of these documents also include citations in footnotes that are

the same font as the text of the documents and take up considerable space.  Given the

straightforward nature of these papers, the Court finds the reported hours for research and

---

Permanent Injunction Br. at 1.); "The Leasing Regulations forbid a motor carrier like ASE to haul freight in
equipment it does not own (Plaintiff Drivers' trucks) unless there is a written lease agreement meeting the
requirements contained in 49 C.F.R. § 376.12." (Preliminary Injunction Br. at 2.  Permanent Injunction Br. at 13.);
"The courts have consistently found carriers liable… ASE's leases fail to clearly state compensation terms in
violation of its unconditional obligations to do so."  (Preliminary Injunction Br. at 10-11.  Permanent Injunction Br.
at 17-18.); The lease agreements "entered into between [Defendant] ASE and Plaintiff Drivers …from which rates
and charges are computed", "on February 17, 2009 … in violation of 49 C.F.R. §376.12(g)."  (Preliminary
Injunction Br. at 11-12.  Permanent Injunction Br. at 18.); see also workers' compensation insurance section.
(Preliminary Injunction Br. at 12-13.  Permanent Injunction Br. at 19-20.); see also charge back section.
(Preliminary Injunction Br. at 13-14.  Permanent Injunction Br. at 20-21.); see also specific duration section.
(Preliminary Injunction Br. at 15-16.  Permanent Injunction Br. at 21-22.); "A [preliminary/permanent] injunction
would further important policy goals of the ICCTA and the [Truth-in-]Leasing regulations."  (Preliminary Injunction
Br. at 22.  Permanent Injunction Br. at 26. ); see also public interest section (Preliminary Injunction Br. at 22-23.
Permanent Injunction Br. at 27.)  See also section on countervailing harm.  (Preliminary Injunction Br. at 23-24.
Permanent Injunction Br. at 25-26.)  See also section on retaliation.  (Preliminary Injunction Br. at 24-25.
Permanent Injunction Br. at 27-28.)

**NOT FOR PUBLICATION**

drafting are greater than necessary; 12 hours will be allowed for the reply and 30 hours will be

allowed for their opposition.

      ii.  <u>Time Spent on Hearings/Depositions</u>

      The Cullen Law Firm spent nearly thirty hours preparing for a hearing held to discuss the

cross-motions for summary judgment.  David Cohen billed 2.5 hours to attend a hearing that

took less than two hours, (ECF No. 62,) while Randall Herrick-Stare billed 5.5 hours to attend

the same hearing and then confer with his clients.  (The Cullen Law Firm's Ex. B, p. 28, lines 15,

20.)  The Court finds that the more than 30 hours spent to have two attorneys prepare for and

attend a less than two hour-long hearing before this Court is excessive.  <u>See</u> <u>Illinois Nat'l Ins.</u>

<u>Co. v. Wyndham Worldwide Operations, Inc.</u>, No. 09-1724, 2011 WL 2293334, at *7 (D.N.J.

June 7, 2011) (finding that more than twenty hours spent to prepare for a one hour hearing was

unreasonable).  Because "[i]t is unreasonable for two high-priced [attorneys] to expend roughly

[eight] times as long to prepare for a hearing as to attend it," the Court reduces Cohen's billings

to 5 hours of preparation and 1.9 hours to attend the hearing, and reduces Herrick-Stare's billings

to 2 hours for preparation and 1.9 hours to attend the hearing.  <u>Microsoft Corp. v. United</u>

<u>Computer Res. of New Jersey, Inc.</u>, 216 F. Supp. 2d 383, 393 (D.N.J. 2002); <u>see also</u> <u>Apple</u>

<u>Corps. Ltd v. Int'l Collectors Soc.</u>, 25 F. Supp. 2d 480, 491 (D.N.J. 1998) (finding that spending

nearly three times as long to prepare for a hearing as to attend it was unreasonable).

      Three lawyers and a paralegal from The Cullen Law Firm next spent nearly 50 hours

preparing for and talking about an allegedly three hour mediation session that only one attorney

attended.  Similar to their preparation for the summary judgment hearing, these lawyers have

spent an unreasonable amount of time preparing for this mediation session; they spent nearly 16

times longer preparing for the session than the meeting actually lasted.  This mediation session

**NOT FOR PUBLICATION**

took place after the lawyers had filed the complaint, moved for a preliminary injunction and defended a motion to dismiss.  At this point, counsel were well versed in the facts and law related to this matter and this much preparation was unwarranted.  The Court allows three hours billed for attending the mediation session and five hours for preparation.

During discovery, a number of depositions were taken.  Defendants object to the presence of two attorneys at a deposition.  In response, plaintiffs claim that "only one lawyer, Mr. Herrick-Stare, defended the depositions of the Plaintiffs in this case."  (Pl. Rep. Br. at 9.)  Plaintiffs, however, do not dispute, or attempt to rationalize, the use of two attorneys for the depositions of Teresa Esteves, Maria Costa and Anthony Perella.  Both Herrick-Stare and David Cohen attended these depositions.  Cohen deposed Costa, (Pl. Summary Judgment Mot., Ex. D) while Herrick-Stare deposed Esteves and Perella.  (Pl. Summary Judgment Mot., Exs. B, E.)  Cohen asked no questions during the depositions of Esteves and Perella, and the only question Herrick-Stare asked in Costa's deposition was for clarification.  (Pl. Summary Judgment Mot., Ex. D. p. 15, ¶ 21 "What?")  While Cohen billed 8.2 hours to "attend depositions of Teresa Esteves, Marie Costa and Anthony Perella; confer with RHS re depositions," (The Cullen Law Firm's Ex. E, p. 18, line 16,) Herrick-Stare (RHS) billed 8.2 hours alone to attend the depositions and another hour to confer with Cohen about them.  (The Cullen Law Firm's Ex. E, p. 18, line 19.)  The depositions lasted less than 7 hours.  (See Pl. Summary Judgment Mot. Exs. B, D, E.)  Under any possible reading of these numbers, these depositions were overbilled.  Furthermore, only one attorney was necessary for each deposition.  See Aerogroup Int'l Inc. v. Ozburn-Hessey Logistics, LLC, No. 08-4217, 2010 WL 4746246, at *12 (D.N.J. Nov. 15, 2010) (finding that "the attendance of additional counsel representing the same interests as the attorney actually participating in a hearing 'is wasteful and should not be included in a request for counsel fees

**NOT FOR PUBLICATION**

from an adversary.'" (citing <u>Apple Corps. Ltd. v. Int'l Collectors Soc.</u>, 25 F. Supp. 2d 480, 489

(D.N.J. 1998)).  A total of 8.9 hours is allowed between the two attorneys – 6.9 hours to attend

the depositions, and an hour for each to discuss.

The Cullen Law Firm then claims to have spent over 70 hours preparing for a contempt

hearing.  They also billed three hours to attend a hearing that only lasted one hour.  (ECF No. 75;

The Cullen Law Firm's Ex. E, p. 31, line 29.)  This clear overbilling further underscores the

Court's belief that plaintiffs have billed an unreasonable number of hours in this case.  "An

attorney making a fee application in a statutory fee-shifting case should not be able to use an

outlandish application as an initial bargaining position in the same way that an attorney for a

plaintiff in a personal injury case might make a grossly inflated opening demand in negotiations

for a settlement."  <u>McKenna v. City of Philadelphia</u>, 582 F.3d 477, 457 n.11 (3d Cir. 2009).  The

Third Circuit has held that a prevailing party in a contempt proceeding may be reimbursed for

reasonable attorneys' fees and costs incurred in demonstrating a contemnor's violations.  <u>Robin</u>

<u>Woods Inc. v. Woods</u>, 28 F.3d 396, 400-01 (3d Cir. 1994).  Here, however, plaintiffs did not

prevail at the contempt hearing and will not be compensated.

<u>Unsuccessful Claims</u>

Where the plaintiffs are not successful on all of their claims " the Court face[s] a difficult

task in sorting out the work that was fairly compensable, which could include only the work that

reasonably was expended in pursuit of the sole successful claim.  Moreover, a plaintiff has the

burden to establish 'that the time spent pursuing the unsuccessful claims contributed in any way

to [his] success on his remaining claims.'"  <u>McKenna v. City of Philadelphia</u>, 582 F.3d 447, 457

(3d Cir. 2009) (quoting <u>Hensley v. Eckerhart</u>, (461 U.S. 424, 435 1983)).

**NOT FOR PUBLICATION**

Here, because plaintiffs' retaliation claim and claims against St. George's Warehouse do not share "a common core of facts" with the successful claims and are not based on "related legal theories," the Court excludes hours plaintiffs devoted to these claims. Id. at 457. Plaintiffs' retaliation claim involved events that allegedly transpired after plaintiffs and defendant All Saints Express entered into the contested leases. Similarly, the claims against St. George's Warehouse rely solely on facts concerning the business relationship between St. George and All Saints, facts unrelated to whether All Saints, the party that actually entered into leases with the plaintiffs, violated the Federal Truth in Leasing Regulations. The legal theories relied upon were also distinct. Plaintiffs claimed that St. George was liable through tortured arguments alleging affiliation and alter-ego. These theories of liability, unsupported by the facts in this case, are distinct from those put forth against All Saints.

Plaintiffs do not attempt to explain how the time they spent on their unsuccessful claims assisted them in prevailing on their other claims. They assert that "even if [they] had prevailed on their retaliation claim and in holding St. George liable, Plaintiffs' relief would not have materially increased." (Pl. Rep. Br. at 6.) It follows then, that this discussion is irrelevant to the Court's discussion of reasonable fees. Plaintiffs also spent 3.05 hours working on a New Jersey workers' compensation claim that never materialized; this time is also excluded because of its irrelevance.

      a. Travel Time

"Generally, time spent in travel is compensable at the attorney's rate if legal work is being performed during travel." Glass v. Snellbaker, No. 05-1971, 2008 WL 4416450, at *9 (D.N.J. Sept. 23, 2008) (citing Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J., 297 F.3d 253, 267 (3d Cir. 2002)). Here, plaintiffs have presented no evidence that any legal work

**NOT FOR PUBLICATION**

was performed during any of their travel time.  Indeed, their time entry descriptions seem to

refute any possibility that any legal work was performed.  (See The Cullen Law Firm's Ex. B p.

4, line 39; p. 10, 21.  "Trip to Newark." or "Travel from Washington to Westfield, NJ to attend

mediation.")

Even when no work is completed, travel time is usually compensable in New Jersey, but

not at an attorney's maximum billing rate  See Erhart v. City of Atlantic City, No. 00-6209,

2006 WL 2385061, at *8 (D.N.J. Aug. 17, 2006) (holding that travel should be calculated at one-

half of the reasonable hourly rate).  Here, travel was only necessary because plaintiffs selected

counsel from Washington, D.C.  As discussed, plaintiffs have not demonstrated to this Court that

competent counsel from this forum was unavailable.  "Under normal circumstances, a party that

hires counsel from outside the forum of the litigation may not be compensated for travel time,

travel costs, or the costs of local counsel."  Interfaith Comm. Org. v. Honeywell Intern., Inc., 426

F.3d 694 (3d Cir. 2005).  Accordingly, The Cullen Law Firm is not entitled to reimbursement for

$46,803.50 that its attorneys billed planning trips and while traveling between Washington, D.C.

and New Jersey.[6]

---

[6] Some of the travel entries submitted include both time spent traveling and time spent at meetings.  (See The Cullen
Law Firm's Ex. B., p.1, line 33.)  ("Travel to N.J.; attend PDF-18 meeting; prepare engagement letters for new
clients; and travel to D.C.")  Because The Cullen Law Firm billed between 3 and 6.6 hours for the trip between
Washington D.C. and New Jersey, the Court will estimate that each of these trips took 4.5 hours.

**NOT FOR PUBLICATION**

| Project | Allowed Hours | Fee Reduction for Allowed Hours[7] | Disallowed Hours | Fee Reduction for Disallowed Hours[8] | Total Fee Reduction |
|---|---|---|---|---|---|
| Complaint | 10 hrs | $920.00 | 63.3 hrs | $28,691.50 | $29,611.50 |
| Preliminary Injunction | 50 hrs | $3,000.00 | 163.4hrs | $69,738.50 | $72,738.50 |
| Preliminary Injunction Reply/ Motion to Dismiss | 25 hrs | $2,043.00 | 101.1 hrs | $47,011.50 | $49,054.50 |
| Summary Judgment | 30 hrs | $3,366.00 | 123.5 hrs | $57,427.50 | $60,793.50 |
| Summary Judgment Opposition | 30 hrs | $3,750.00 | 49.4 hrs | $23,465.00 | $27,215.00 |
| Summary Judgment Reply | 12 hrs | $1,500.00 | 40.8 hrs | $19,380.00 | $20,880.00 |
| Summary Judgment Hearing | 10.8 hrs | $1,350.00 | 28.6 hrs | $13,585.00 | $14,935.00 |
| Mediation | 8 hrs | $920.00 | 43.85 hrs | $16,019.25 | $17,521.25 |
| Depositions | 8.9 hrs | $1,023.50 | 9.5 hrs | $4,417.50 | $5,441.00 |
| Contempt | 0 hrs | $0 | 74.4 hrs | $35,340.00 | $35,340.00 |
| St. George's Warehouse | 0 hrs | $0 | 44.7 hrs | $20,755.50 | $20,655.50 |
| Retaliation | 0 hrs | $0 | 38.5 hrs | $17,375.00 | $17,375.00 |
| Workers' Compensation | 0 hrs | $0 | 12.05 hrs | $5,603.25 | $5,603.25 |
| Travel | 0 hrs | $0 | 122.5 hrs | $47,547.50 | $47,547.50 |
| Pro Hac Vice | 0 hrs | $0 | 1.1 hrs | $473.00 | $473.00 |
| Other Tasks | 529.3 hrs | $52,966.50 | 0 hrs | $0 | $52,966.50 |

Overall Reduction = $478,151.00

    b.  <u>Tompkins, McGuire, Wachenfeld & Barry LLP</u>

    Defendants claim that local counsel's request for attorneys' fees and costs should be

---

[7] Because the requested hourly rate was reduced, even the hours that were reasonably expended on each task result in a reduction of the fee award.

[8] While counsel uses an average fee charged of $431 as the lodestar fee, (<u>see</u> Pl. Rep. Br. at 7,) the Court examined the actual rate The Cullen Law Firm charged for given tasks. As such, in reducing the requested amount for attorneys' fees, the Court disallowed hours at the hourly rate The Cullen Law Firm charged and not at an average rate.

**NOT FOR PUBLICATION**

denied in its entirety because "[h]iring local counsel is simply a cost of doing business in New

Jersey much like paying money to the client security fund."  (Def. Br. at 5.)  They cite no case

law for this proposition.  C.f. <u>Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.</u>, No.

05-3362, 2008 WL 687263, at *8 (D.N.J. Mar. 10, 2008) (allowing attorneys fees for local

counsel.)  A certain amount of communication between The Cullen Law Firm and local counsel,

and work on the part of local counsel, was necessary during the course of the litigation.  Here,

local counsel's efforts were not duplicative, and the time they expended on their representation

was reasonable.  Only minor reductions in fees are warranted.

Local counsel billed 1.4 hours reviewing the complaint and doing research for a

completely different owner-operator case The Cullen Law Firm also worked on.  (<u>See</u> Tompkins,

McGuire, Wachenfeld & Barry LLP's Ex. A, 3/16/2009, "Receipt and Review draft complaint

PDF 18 v. Big Daddy (.80); internet research as to Big Daddy (.60).")  The Court cannot

conceive of any reason why reviewing a complaint in another matter *after* the complaint in this

case had been filed is in any way reasonable.  This time will be disallowed.  Tompkins,

McGuire, Wachenfeld & Barry LLP is awarded $29,735 in attorneys' fees.

   D.  <u>Costs</u>

The vast majority of the costs that The Cullen Law Firm seeks to recover are for copies.

Not all of the requested copies are adequately documented.  Many submitted copies are

explained as being a "photocopy cost," "Corel office document," "document1," "scan," "copy,"

"untitled," or simply a string of numbers.  Because "the burden remains on the party requesting

the fee to prove its reasonableness, and the court has 'a positive and affirmative function in the

fee fixing process, not merely a passive role,'" <u>Interfaith Comm. Org. v. Honeywell Intern., Inc.</u>,

426 F.3d 694, 712 (3d Cir. 2005) (citing <u>Loughner v. Univ. of Pittsburgh,</u> 260 F.3d 173, 180 (3d

**NOT FOR PUBLICATION**

Cir. 2001)), the charges that are not adequately recorded will not be awarded.  $303.20 worth of copying is excluded.

The Cullen Law Firm also seeks to recover over $600 for telephone and fax charges. "An attorney's telephone and fax expenses are generally recoverable as long as they are reasonable and necessary in order for the attorney to be able to render legal services." Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F. Supp. 2d 480, 500 (D.N.J. 1998).  The Cullen Law Firm, however, did not specify to whom the calls were made or list the cities called, instead opting to list only "long distance charges."  Similarly, nearly all of their fax charges fail to list the contents or recipients of the faxes.  Since the Court is unable to determine if those expenses were reasonable, it shall permit recovery only for the few entries with sufficient detail to examine the reasonableness of the charge.  Id.  $619.80 of the request is disallowed.

Local counsel's cost submissions are not much better.  None of their mail, copy, fax and telephone charges provide any detail.  Instead, they simply say "Vendor UNITED PARCEL SERVICE," "Copying," "Long Distance Facsimile," and "Telephone – Long Distance."  It is impossible to determine the reasonableness of these submissions.  The requested reimbursement of $826.24 is reduced to $664.85.

## CONCLUSION

"Excessive legal fees, if not checked by the exercise of billing judgment or, in this case, this Court's inherent powers, will be borne unjustly by someone, be that a losing adversary, a client, or a client's unsuspecting customers or shareholders.  The duty imposed by the Rules of Professional Conduct to represent a client zealously does not create a license to write a blank check for excessive legal fees." Microsoft Corp. v. United Computer Resources of New Jersey, Inc., 216 F. Supp. 2d 383, 386 (D.N.J. 2002).

**NOT FOR PUBLICATION**

Here, the fees submitted by The Cullen Law Firm were clearly excessive and have been reduced accordingly.  $229,456.50 is an appropriate award of attorneys' fees for The Cullen Law Firm in light of the hours reasonably expended on this litigation.  The Cullen Law Firm is also awarded $18,981.05 in costs.  Local counsel is awarded $30,399.85.

For the foregoing reasons, it is on this 15th day of August, 2011,

**ORDERED** that All Saints must pay plaintiffs $278,837.40 in attorneys' fees and costs.


<u>s/ William H. Walls</u>
United States Senior District Judge